BRONAUGH, APPELLANT, v. HARDING HOSPITAL, INC., ET AL.,
APPELLEES.

[Cite as Bronaugh v. Harding Hospital, 12 Ohio App. 2d 110.]

(No. 8303—Decided February 7, 1967.)

*Mr. Henry Clay Scott,* for appellant.
*Messrs. Wright, Harlor, Morris, Arnold & Glander* and
*Mr. James E. Pohlman,* for appellees.

TROOP, J. This is an appeal on questions of law from a judgment and final order made by the Common Pleas Court of Franklin County. The plaintiff in the trial court was Wayne Bronaugh, a doctor of medicine licensed in 1923, and the defendants were Harding Hospital, Inc., and Dr. Herndon Harding, associated with the hospital. Reference herein will be to the plaintiff, the hospital, and the doctor respectively.

Two causes of action appear in plaintiff's petition. The first cause claims that plaintiff was taken to the hospital on August 2, 1962, by members of his family and was admitted for treatment. Plaintiff alleges further that immediately after admission, and repeatedly thereafter, he requested to be allowed to leave the hospital, but that the hospital and the doctor persistently refused him permission to call an attorney, call doctors of his own choice, or to leave the hospital until August 16, 1962, on which date he was allowed to leave after 14 days of unlawful detention.

For a second cause of action plaintiff asserts certain existing personal physical conditions, degenerative arthritis in the spinal column, injured fingers, and an injured shoulder, all of which caused pain necessitating the use of drugs to relieve the pain. Plaintiff further alleges negligence on the part of the hospital and doctor in failing to provide side rails for his bed while

he was being unlawfully detained, because of which negligence plaintiff fell out of bed and fractured two ribs, which fractures the hospital and doctor negligently failed to discover.

The amended answer filed on behalf of the defendants addressed two defenses to the first cause of action: (1) the plaintiff's first cause of action was not commenced within the time limited for the commencement of such action, and (2) after certain basic admissions, a general denial. As to the second cause of action there are basic admissions and then follows an averment that after plaintiff's fall he was examined, X-rayed, and treated, but no fracture of the ribs was found. There is also a general denial as to the second cause of action.

Certain dates, events, and papers established by testimony and exhibits figure largely in the consideration of the issues. They are as follows:

August 2, 1962—Admission to the hospital on application of Marion Cockley, daughter of the plaintiff. (Defendants' Exhibit No. 5A.)

August 4, 1962—Plaintiff fell out of bed. Hospital ''Incident Report.'' (Defendants' Exhibit No. 5B.)

August 5, 1962—Plaintiff freed himself of restraints and fell to the floor, one wrist still restrained—no injuries. Hospital ''Incident Report.'' (Defendants' Exhibit No. 5B.)

August 6, 1962—At 6:28 p.m., plaintiff broke his glasses and cut his wrists. Examined and treated. Hospital ''Incident Report.'' (Defendants' Exhibit No. 5B.)

August 6, 1962—(a) Application for Nonjudicial Hospitalization signed by Mrs. Charles Dana, daughter of the plaintiff. (Defendants' Exhibit No. 4.)

(b) Supporting Medical Certificate, certifying plaintiff as ''mentally ill'' signed by Dr. Herndon Harding. (Defendants' Exhibit No. 6.)

(c) Supporting Medical Certificate, certifying plaintiff as ''mentally ill'' signed by Dr. William E. Todd. (Defendants' Exhibit No. 7.)

August 10, 1962—Date of Dr. Todd's note on Medical Certificate. Presumably the day on which his signature was attached to the certificate. (Defendants' Exhibit No. 7.)

August 16, 1962—1:30 p. m.—Time of plaintiff's discharge

from the hospital according to the decision of the plaintiff's brother and daughters. (Part of Defendants' Exhibit No. 5A.)

A note appearing on the document, apparently prepared at the time of discharge (part of Defendants' Exhibit No. 5A), fairly well summarizes a substantial part of the testimony concerning the plaintiff. It is a note referring to the plaintiff called "Situational Diagnosis" made by Dr. Herndon Harding and reads as follows:

"Extremely hard working G. P. surgeon who after injuring hand six years ago began taking narcotics. Federal agents recently began investigation and this caused the patient's four daughters to be concerned. They arranged his hospitalization with support of the Narcotic agent against the patient's wishes."

The case was tried before a jury, but at the conclusion of the defendants' case the trial court sustained the defendants' motion for a directed verdict in their favor on both the first and second causes of action. Plaintiff moved for a directed verdict as to liability on the first cause of action, which was overruled. Judgment was entered for the defendants as to both the first and second causes of action, from which judgment this appeal is taken.

Plaintiff, appealing herein, predicates his appeal on five assignments of error. They are listed as follows:

"1. The court erred in refusing to allow plaintiff to testify as to whether or not side rails should have been provided for his bed by defendants.

"2. The court erred in allowing certain hearsay testimony by defendants' witness.

"3. The court erred in directing a verdict in favor of defendant hospital as to the second cause of action.

"4. The court erred in directing a verdict in favor of defendants as to the first cause of action.

"5. The court erred in overruling plaintiff's motion for a directed verdict on the issue of liability as to the first cause of action."

Assignments of error numbered one and three are related and can be discussed together. Plaintiff was not allowed to testify concerning the failure to use rails on the sides of his bed.

He was asked by his counsel if he had an opinion concerning such lack of use. Previous questions designed to establish the plaintiff as an expert, trying to remove him from the usual rule as to opinion evidence, were asked by counsel. The trial court held that the defendant hospital is a specialized institution and that to determine the degree of care required in the operation of such a hospital required expert testimony. The trial court excluded the testimony of the plaintiff on the ground that he was not such an expert. The text writers have summarized some of the basic rules as to the qualifying and use of the "expert." 21 Ohio Jurisprudence 2d 429 and 430, Section 421, provides general rules as follows:

"Expert witnesses are witnesses shown to be experienced, learned, or skilled in a particular art, business, profession, science, trade, or vocation, and one assuming to testify as an expert must, of course, be sufficiently qualified; before he can be said to be competent it must appear that his opinion is based upon some superior knowledge not possessed by the ordinary jury, * * *. The test to be applied in determining the competency of the witness to testify as an expert is implied from the definition of expert evidence; his qualification depends upon his possession of special knowledge which he can impart to the jury, and which will assist them in regard to a pertinent matter, which he must have acquired either by study of recognized authorities on the subject or by practical experience, * * *."

To rule upon the qualifications of an expert is within the sound discretion of the trial court, and if the sole question presented here had been concerning proper procedure in a mental hospital, the exclusion of the plaintiff's testimony could have been regarded as correct. This plaintiff, however, testified that he had severe back pain which induced his restlessness, which adds another factor to be resolved. The use of side rails, therefore, relates to the physical condition of this specific patient, not solely as to hospital practice related to the mentally ill or the narcotic addict.

In the instant case, the testimony of the plaintiff was proper and should have been admitted. Assignment of error number one is sustained.

Plaintiff argues that he made a prima facie case against

the hospital as to his second cause of action, and that the trial court erroneously directed a verdict against him and in favor of the defendant hospital. There are two phases to the second cause of action, the failure to supply bed rails, and the failure to discover and properly treat the claimed fractured ribs of the plaintiff. There is in the record the testimony of Dr. Herndon Harding concerning the general practice of not using bed rails by psychiatric hospitals. The proffered testimony of the plaintiff, which should have been admitted, raises an issue. While there is no testimony in the record concerning possible negligence in the discovery and treatment of any broken ribs, the issue is raised as to the failure to use side rails and must be resolved. The trial court, therefore, erroneously directed a verdict respecting the second cause of action.

The remaining assignments of error will be discussed together. Claimed false imprisonment is the essence of the first cause of action, but the fundamental issue is obscured by the issue arising from the defense interposed claiming the running of the statute of limitations as to that cause of action.

The position of the trial court is clear and precise in the directing of the verdict favorable to the hospital in the first cause of action. There is specifically no holding respecting the claimed illegal detention of the plaintiff. The court finds that if there was an illegal detention beginning August 2, 1962, it ended on August 10, 1962, at which time the statute of limitations began to run, which makes the filing of plaintiff's petition on August 15, 1963, untimely and barred by the statute.

In finding that any possible illegal detention of the plaintiff ended August 10, 1962, the court applied and interpreted Section 5122.06, Revised Code, which provides for the "nonjudicial hospitalization" of a "mentally ill individual subject to hospitalization by court order." The comment of the court indicates that it feels that the interpretation given was a "reasonable" interpretation.

A statute such as Section 5122.06, Revised Code, providing for the admission of a person to a hospital without notice to him and without any judicial process constitutes an invasion of the basic common-law rights of a citizen and therefore must be strictly construed. There is no authority squarely in point as to

this statute which represents a relatively new and modern approach to the handling of the mentally ill (see 22 Ohio State Law Journal No. 4, 659), but traditionally our courts have strictly applied the statutes dealing with the insane (now mentally ill) in such matters as the giving of notice and otherwise. In the case of *In re Koenigshoff, Incompetent* (1954), 69 Ohio Law Abs. 121, the court says, at page 128: "It is fundamental that in a proceeding such as here under consideration, statutory requirements must be strictly adhered to * * *." (See, also, *State, ex rel. Parsons,* v. *Bushong, Supt.* [1945], 92 Ohio App. 101.)

In considering the requirements contained in Section 5122.-06, Revised Code, subsections (A) and (B) of the definitions section, Section 5122.01, Revised Code, must be respected. They read as follows:

"(A) 'Mentally ill individual' means an individual having an illness which substantially impairs the capacity of the person to use self-control, judgment, and discretion in the conduct of his affairs and social relations, and includes 'lunacy,' 'unsoundness of mind,' 'insanity,' and also cases in which such lessening of capacity for control is caused by such addiction to narcotics, sedatives, alcohol, or stimulants as to make it necessary for such person to be under treatment, care, supervision, guidance, or control.

"(B) 'Mentally ill individual subject to hospitalization by court order' means a mentally ill individual who, because of his illness, is likely to injure himself or others if allowed to remain at liberty, or is in need of care or treatment in a mental hospital, and because of his illness lacks sufficient insight or capacity to make responsible decisions with respect to his hospitalization."

There are two requirements contained in Section 5122.06, Revised Code. They must be met, strictly as provided, if "any individual who does not object in writing" is to be hospitalized without his consent and without judicial process, as follows:

"(A) Written application to the hospital by a friend, relative, spouse, * * *.

"(B) Certification, which includes a written medical report by two licensed physicians, * * * that they have examined the individual and that they are of the opinion that he is a mentally ill individual subject to hospitalization by court order."

It should be noted that Section 5122.06, Revised Code, does not deal simply with the "mentally ill," defined in subsection (A), *supra*, but rather with the "mentally ill individual subject to hospitalization by court order," which means one who because of his illness is likely to injure himself or others, etc., as defined in subsection (B), *supra*.

An application for nonjudicial hospitalization (Defendants' Exhibit No. 4) was made in the instant case on August 6, 1962, by Mrs. Charles Dana, a daughter of the plaintiff. The form used appears to have been provided by the Department of Mental Hygiene as authorized by statute. It properly contains a printed reference to the requirements of Section 5122.06, Revised Code, *i. e.*, that the applicant believes that the patient is likely to injure himself or others, or that he is in need of care or treatment in a mental hospital, or that he lacks capacity to make decisions with respect to his hospitalization.

The application appears to be proper. It must be supported by two medical certificates. Defendants' Exhibits No. 6 and No. 7 are offered as the two certificates furnished in the instant case. The first is that of Herndon P. Harding, M. D., dated and signed August 6, 1962. The doctor certifies that he personally observed and examined the plaintiff with care and diligence and that he found him "mentally ill." The doctor penned a supporting note on the certificate as follows:

"Addicted to Leritine and Demerol with complete denial of his dependence on either."

A finding of "mentally ill" does not satisfy the requirements of Section 5122.06, Revised Code (See Section 5122.01 (A), Revised Code). The finding must be that he is a mentally ill individual subject to hospitalization by court order. (Section 5122.01 (B), Revised Code.) It is noted that the reference to the plaintiff's addiction to Leritine and Demerol made by the doctor still does not bring the plaintiff within the framework of Section 5122.06, Revised Code. He is still only "mentally ill," because Section 5122.01 (A), Revised Code, covers cases where there is a "lessening of capacity for control" which is "caused by such addiction to narcotics" as to make treatment or control, etc., necessary.

The second medical certificate is Defendants' Exhibit No. 7. dated August 6, 1962, and signed by William E. Todd, M. D.

The date of signing is not clear, but it would seem to be on August 10, 1962, the date attached to the penned supporting note by the doctor, which reads as follows:

"8/10/62 Addicted to Leritine & Demerol. He has shown withdrawal symptoms, depression, suicidal tendencies, poor judgment, pressure of speech & no insight."

Dr. Todd certifies basically the same as Dr. Harding respecting his observation and examination and finds that the plaintiff is "mentally ill." These findings are inadequate to satisfy Section 5122.06, Revised Code, but his supporting note finds the existence of "suicidal tendencies." This observation may be sufficient to raise the "mentally ill" finding to the level required even though it was not contemporaneous with the application, August 6, 1962, but followed the evening of August 9, when the doctor saw the patient, which, by the way, was after the patient had cut his wrists on August 6, 1962, at about 7 p. m., which the plaintiff says he did in order to get out of the defendant hospital.

Dr. Todd's certificate is not totally and clearly in compliance with the statute, but his supporting note attesting to "suicidal tendencies" may make it so. In any event, the application for nonjudicial hospitalization is supported by only one proper certificate. The certificate of Dr. Herndon Harding is insufficient to meet the requirements of Section 5122.06, Revised Code.

Two other sections of Chapter 5122, Revised Code, should be noted briefly. They suggest the rigidity of the requirements of the chapter and the intention of the Legislature to protect the basic common-law rights of the citizen. Section 5122.19, Revised Code, requires that a person entered in a hospital under Section 5122.06, Revised Code, must have an examination by a "designated examiner" within five working days after his admission. It further provides that if the examiner fails to find that the patient is mentally ill and a danger to himself or others, if released, the patient shall be immediately discharged. There is nothing in the record that indicates compliance with this statute within five days from August 2, August 6, or August 10, whichever may be applicable.

The opening sentence in Section 5122.06, Revised Code, says: "Any individual who does not object in writing may be admitted to a hospital, * * *." Such a provision clearly suggests

that the individual must be advised of that right and be afforded the means of making such a writing, otherwise the provision is totally futile. The Legislature failed in Section 5122.06, Revised Code, to put the burden on the head of the hospital to advise a patient of his rights and to supply writing material, except that it might have done so by implication. Section 5122.24, Revised Code, is addressed to the right to release of involuntary patients, specifically covering those admitted under Section 5122.06, Revised Code. It provides for starting the process for possible release by a request in writing by the patient or others. The section concludes as follows:

"The head of the hospital shall provide reasonable means and arrangements for informing patients of their right to release as provided in this section and for assisting them in making and presenting requests for release."

Nothing in the record in the instant case would indicate that the patient was informed of his right, or afforded the means of accomplishment.

As to the objection to the testimony of Zumac Cockley raised by assignment of error number two, it could be argued that the testimony, although hearsay, was not prejudicial when considered in the light of the volume of testimony, including that of plaintiff himself, indicating the persistent use and possible addiction to drugs carrying a strong if not absolute narcotic character. The testimony is, however, hearsay and if given in a different setting, strongly prejudicial. This assignment of error is well taken.

Strictly construing the controlling statutes, the nonjudicial hospitalization attempted under Section 5122.06, Revised Code, was not properly consummated, and the unlawful retention of the plaintiff, if there be such, was not ended on August 10, 1962, but continued until August 16, 1962, and, therefore, plaintiff's first cause of action was not barred by the statute of limitations. Sustaining the motion for a directed verdict in favor of the defendants as to plaintiff's first cause of action was in error, and is, therefore, reversed.

The motion of the defendant hospital for a directed verdict in its favor as to the second cause of action should have been overruled.

The decision and judgment of the trial court makes it clear

that there was no determination as to whether there was an unlawful restraint by the defendants of the physical liberty of the plaintiff. The existence of false imprisonment is a mixed question of law and fact. What facts constitute false imprisonment is for the court, and whether that state of facts does exist is for the jury. (22 American Jurisprudence 428, Section 117.) Plaintiff's fifth assignment of error is not well taken, and the overruling of plaintiff's motion for a directed verdict on the issue of liability as to the first cause of action is sustained.

There having been no finding upon the issue raised by the first cause of action, the cause is remanded for a new trial.

*Judgment accordingly.*

BRYANT, P. J., and DUFFEY, J., concur.