CRANE, Appellant,

v.

LAKEWOOD HOSPITAL, Appellee.

[Cite as *Crane v. Lakewood Hosp.* (1995), 103 Ohio App.3d 129.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67435.

Decided April 24, 1995.

*Landskroner & Phillips Co., L.P.A.,* and *Christian R. Patno,* for appellant.

*Weston, Hurd, Fallon, Paisley & Howley, William H. Baughman, Jr.* and *Deirdre G. Henry,* for appellee.

PORTER, Judge.

Plaintiff-appellant Ruth Crane appeals from the trial court's directed verdict in favor of defendant-appellee Lakewood Hospital at the conclusion of the plaintiff's evidence. Plaintiff claimed the hospital was negligent in the choice of chair placed in the hospital atrium, which slid out from under her on the tiled floor when she was bending over to retrieve an object. Plaintiff claims the court erred in striking certain evidence bearing on the hospital's negligence and in requiring plaintiff to prove that defendant had knowledge of a dangerous condition the defendant had created. We find merit to the appeal and reverse and remand for a new trial for the reasons hereinafter stated.

On November 3, 1986, plaintiff, a seventy-two-year-old woman, was visiting her husband, who was a patient at Lakewood Hospital. She visited with her husband

on the third floor atrium of the hospital, where they spent some time playing Yahtzee at a table in the area open to visitors. Mrs. Crane was seated in a "Thonet" brand chair which slid easily over the tiled floor. One of the dice used in the game fell to the floor to the left of plaintiff. As she bent over to her left to pick up the die, the chair slid out from under her on the tile floor and dumped her onto the floor. As a result of this fall, plaintiff suffered serious fractures and injuries requiring a hip replacement. Her medical bills exceeded $40,000.

A jury trial was held on plaintiff's claims. She and her attending physician testified by videotaped deposition. Her son, James Crane, and Fred DeGrandis, Chief Counsel and Assistant Administrator of Lakewood Hospital at the time of the incident, gave live testimony. Plaintiff's sons, Jim and John Crane, went to the hospital the day after the fall and met with DeGrandis regarding the accident. Together they went and inspected the atrium area and examined the chairs. Jim Crane testified that he told DeGrandis that the Thonet style chair was inappropriate for the atrium. Jim testified that DeGrandis responded by saying that "they shouldn't have been there." Pursuant to the hospital's objection, the court struck this testimony and directed the jury to disregard it.

Jim Crane also testified that he examined the Thonet chair and identified pictures of the same type of chair admitted in evidence. He observed that the chair has a "very poor center of gravity" when someone is sitting in it, that the chair's arms extended beyond the legs, and that the chair was very light and unstable. The trial court sustained the hospital's motion to strike Crane's personal observations regarding the chair's "poor center of gravity" and that it was "tipsy."

On cross-examination, DeGrandis acknowledged that the hospital expected elderly visitors to sit in the Thonet chairs in the atrium in November 1986. He admitted that he met with John and Jim Crane (whom he knew previously) the day after Crane was injured. He acknowledged that he accompanied either John or Jim Crane to the atrium to view the location where their mother fell, but could not recall the conversation he had had with them.

Plaintiff testified to the fall as described previously and her doctor testified to the injuries and treatment resulting therefrom.

At the conclusion of plaintiff's evidence, the trial court directed a verdict on the grounds that plaintiff had failed to prove negligence. This timely appeal ensued.

We will address plaintiff's assignments of error in the order presented.

"I. The trial court abused its discretion in striking Jim Crane's opinion testimony regarding the Thonet chair's high center of gravity because this testimony was helpful to the determination of whether the hospital was negligent

in placing the Thonet chair in the atrium where the hospital knew elderly invitees would sit."

■ The admission or exclusion of evidence is ordinarily within the sound discretion of the trial judge. *Ingalls v. Ingalls* (1993), 88 Ohio App.3d 570, 578, 624 N.E.2d 368, 373; *Pasela v. Brown Derby, Inc.* (1991), 71 Ohio App.3d 636, 647, 594 N.E.2d 1142, 1149; *Morris v. Stone* (1972), 33 Ohio App.2d 101, 104, 62 O.O.2d 171, 173, 292 N.E.2d 891, 893–894. However, under Evid.R. 701 a lay witness may give "his testimony in the form of opinions or inferences * * * which are (1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

The Staff Note to Evid.R. 701 further explain as follows:

"Ohio has also long recognized that there is an exception to the general rule which permits a non-expert witness to express his opinion. The exception is made for testimony which is a compound of fact and opinion. *Steamboat Clipper v. Logan* (1849), 18 [Ohio] 375, 396. A prime example is that of the non-expert witness testifying as to physical condition. The witness is permitted to testify in the form of a conclusion because the primary facts gained from observation and upon which the conclusion is based are too numerous to detail."

■ Thus, it has long been recognized that a lay witness can testify to how fast a car was going, how big an article was, and similar observations based on common experience.

"Where the testimony is based on recited personal observations, a non-expert can express opinions about another's sanity, *Weis v. Weis* (1947), 147 Ohio St. 416 [34 O.O. 350, 72 N.E.2d 245]; about another's physical condition, *Bronaugh v. Harding Hospital, Inc.* (1967), 12 Ohio App.2d 110 [41 O.O.2d 185, 231 N.E.2d 487]; about height, temperature, time, light, weight, dimension, distance, *State v. Auerbach* (1923), 108 Ohio St. 96, 98 [140 N.E. 507, 508]; about another's emotional state, *[Baltimore & Ohio] Railroad Co. v. Schultz* [ (1885), 43 Ohio St. 270, 1 N.E. 324]; about the speed of a moving object, *State v. Auerbach, supra;* or about another's sobriety, *Railroad Co. v. Schultz, supra.*" *State v. Morris* (1982), 8 Ohio App.3d 12, 17, 8 OBR 13, 18–19, 455 N.E.2d 1352, 1358.

■ Here, the plaintiff's son observed the Thonet chairs in the atrium the day after the accident; his brother sat in them and slid them around and lifted them up. He too moved the chairs around. Pictures of virtually identical chairs from the atrium area were admitted in evidence. Based on these observations, the son testified that the chairs were "very unstable"; the "arms protruded substantially past the legs"; they were "very light" and moved over the tile floor "with ease." There was no objection to this evidence. However, the court sustained a motion to strike the son's observation that "when someone is sitting in the chair, the

center of gravity is very poor" and the chair is "tipsy" when moved from side to side. Although the witness was allowed to testify without objection that the chair was unstable, he was thus prevented from explaining in what respect it was unstable based on his observations, *i.e.*, it had a poor center of gravity and was easily tipped over.

Under the circumstances, we believe the court abused its discretion in not allowing this critical testimony to stand which was essential to establishing the dangerous condition that caused the plaintiff's injuries.

This assignment of error is sustained.

"II. The trial court erred in striking material testimony from the record which was an admission of liability by defendant's agent because the statement was offered against defendant and was a statement by defendant's agent concerning a matter within the scope of the agent's employment and was made during the existence of the employment relationship."

■ The trial court also excluded the son's testimony regarding the statement made by the hospital Vice President, DeGrandis, to the effect that the chairs "shouldn't have been there," *i.e.*, in the atrium where plaintiff was injured. The court apparently struck this on the basis of hearsay, ruling that "[h]e can not say what another person said." We agree with plaintiff, however, that this was an admission by an officer or an agent of the hospital the day after the accident and was not hearsay within the meaning of Evid.R. 801(D), entitled "Statements Which Are Not Hearsay":

"(2) *Admission by Party–Opponent.* The statement is offered against a party and is * * * (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship * * *."

■ It is well established under Ohio law that a statement by an officer or agent of a corporate party conceding that a condition should not have existed is not hearsay under the Rules of Evidence. The admission should have been permitted to stand as some probative evidence that the hospital was negligent in permitting the condition to exist. *Parker v. Baldwin Manor Nursing Home* (June 21, 1984), Cuyahoga App. No. 47714, unreported, 1984 WL 5090 (nursing home staff's comments not hearsay as they constituted statements by party's servants made during their employment at nursing home). See, also, *Sobony v. Osobo Games & Toys, Inc.* (Apr. 16, 1987), Cuyahoga App. No. 51720, unreported, 1987 WL 9861 (letter written by counsel was admission pursuant to Evid.R. 801[D][2], as it was statement by agent concerning matter within scope of agency and made during existence of employment of defendant); *Le–Gals, Inc. v. D–K*

*Assoc., Inc.* (June 15, 1989), Cuyahoga App. No. 55381, unreported, 1989 WL 65681 (supervisor's statement contained in affidavit was admissible pursuant to Evid.R. 801[D][2], as supervisor was defendant's representative when statement made and he was within the scope of his employment when he made defamatory statement); *Szymczak v. Midwest Premium Finance Co.* (1984), 19 Ohio App.3d 173, 19 OBR 280, 483 N.E.2d 851 (insurance agent's statement extending time for premium payment was admissible pursuant to Evid.R. 801[D][2] ).

Under the circumstances, we find the court abused its discretion in excluding this key piece of evidence from a hospital officer.

■ Furthermore, although counsel did not proffer the excluded testimony, there was no need to as the substance of the excluded testimony is apparent from the record. *Patterson v. Ravens–Metal Prods., Inc.* (1991), 72 Ohio App.3d 216, 229, 594 N.E.2d 153, 161–162; *Gannett v. Booher* (1983), 12 Ohio App.3d 49, 54, 12 OBR 190, 195–196, 465 N.E.2d 1326, 1333; Evid.R. 103(A)(2). The witness stated that it was DeGrandis who agreed with him that the chairs should not have been placed in the atrium. This is enough to enable us to review the trial court's decision to exclude the admission testimony.

This assignment of error is sustained.

We will address plaintiff's Assignments of Error III and IV together as they are interrelated.

"III. The trial court erroneously granted defendant's motion for a directed verdict because Mrs. Crane was not required under Ohio law to prove that the hospital had knowledge that its placement of the Thonet chair on the tiled floor in the third floor atrium where elderly invitees would sit amounted to the creating by the hospital of an unreasonable risk of harm.

"IV. The trial court erroneously granted defendant's motion for a directed verdict because reasonable minds could conclude that the hospital negligently created an unreasonable risk of harm placing a chair in which elderly invitees would sit upon a tile floor."

We are unable to determine from the transcript whether the trial court directed a verdict for the hospital because it misplaced the burden of proof, as plaintiff argues in these assignments of error, or because there was insufficient evidence of negligence. If, as we have found in the previous discussion, the court erred in excluding the son's testimony on the stability of the chair and the DeGrandis admission, and the court should have considered that evidence in ruling on the motion for a directed verdict, then the motion should have been overruled without regard to the burden of proof. However, because we find the

case must be retried, and because the defendant argued that plaintiff failed in maintaining her burden of proof in making its motion for a directed verdict, we shall address the issues under Assignments of Error III and IV.

█ In order to establish a cause of action in negligence, plaintiff bears the burden of proving that (1) defendant owed a duty of reasonable care towards the plaintiff; (2) that the defendant breached its duty of reasonable care; and (3) that the plaintiff suffered injuries proximately caused by the breach. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469–470; *Fischer v. Dairy Mart Conv. Stores* (1991), 77 Ohio App.3d 543, 551, 602 N.E.2d 1204, 1209; *Wilburn v. Cleveland Elec. Illum. Co.* (1991), 74 Ohio App.3d 401, 406, 599 N.E.2d 301, 303–304.

█ A person who visits a relative in a hospital is an "invitee" under Ohio law. *Stinson v. Cleveland Clinic Found.* (1987), 37 Ohio App.3d 146, 148, 524 N.E.2d 898, 900–901. As an invitee, plaintiff was owed a duty of ordinary care by the hospital. *Presley v. Norwood* (1973), 36 Ohio St.2d 29, 31, 65 O.O.2d 129, 130, 303 N.E.2d 81, 83–84. The hospital was required to maintain the atrium in a safe condition, eliminating any conditions comprising an unreasonable risk of harm to visitors. *Id.*

█ In order to exercise its duty of reasonable care towards persons visiting patients on its premises, Ohio law requires that the hospital "take into account that the aged and infirm as well as the young and robust [would] visit" the hospital. *Campbell v. Hughes* (1950), 153 Ohio St. 9, 11, 41 O.O. 107, 108, 90 N.E.2d 694, 695; *Crampton v. Kroger Co.* (1959), 108 Ohio App. 476, 482, 9 O.O.2d 432, 435–436, 162 N.E.2d 553, 558–559. Thus, the hospital had a duty to exercise reasonable care in selecting a chair for the atrium that was not top-heavy or likely to slide out from under a person bending over. If DeGrandis admitted to the son that the Thonet chair "should not have been there," this arguably amounted to a recognition of an unreasonable risk of harm to foreseeable invitees making use of the atrium furniture.

█ When it is the property owner itself which creates the hazardous condition which causes the plaintiff's injury, then the plaintiff need not show that the owner had knowledge or notice of the condition at issue. *Presley*, 36 Ohio St.2d at 31, 65 O.O.2d at 130, 303 N.E.2d at 83–84. This sensible rule follows because one who has created the condition is presumed to know what it created. See, *e.g.*, *Tandy v. St. Anthony Hosp.* (Nov. 29, 1988), Franklin App. No. 88AP–551, unreported, 1988 WL 129161. *Tandy* is directly on point with the facts at

bar. In *Tandy,* the court of appeals reversed the trial court's entry of summary judgment in favor of the defendant. The court stated:

"It is not defendant's lack of notice which is determinative, but, rather, whether [the defendant] negligently placed the doormat in such a position as to create a dangerous or hazardous condition. The evidence presented by defendant states merely that no complaints have been received, and there were no prior reported falls. This does not negate defendant's creating a dangerous condition, which caused plaintiff to fall and be injured." *Tandy* at 2.

See, also, *Guilford v. Cent. Hardware Co.* (1989), 62 Ohio App.3d 58, 574 N.E.2d 564 (evidence indicated that store owner created hazardous condition by placing splintered rake on display, therefore knowledge or notice not required to be shown); *Stephens v. Akron Palace Theatre Corp.* (1936), 53 Ohio App. 434, 436–437, 7 O.O. 282, 282–283, 5 N.E.2d 499, 500; *Fox v. Ben Schechter & Co.* (1937), 57 Ohio App. 275, 277, 9 O.O. 101, 102, 13 N.E.2d 730, 731.

At the new trial, plaintiff is not required under Ohio law to present any evidence that the hospital had notice of the unreasonable risk of harm created by its placement of the Thonet chair in the third floor atrium once it is conceded that the chair was placed there by the hospital during the course of remodeling.

For the reasons hereinbefore stated, we find that the trial court erroneously granted a directed verdict at the conclusion of plaintiff's case. Assignments of Error III and IV are sustained.

The judgment is reversed and the cause is remanded for a new trial.

*Judgment reversed*
*and cause remanded.*

James D. Sweeney, P.J., and O'Donnell, J., concur.