OPINION
Plaintiff-Appellant Donita J. Brandt appeals the trial court's judgment entry in favor of Defendant-Appellee Nationwide Mutual Insurance Co. ("Nationwide"), and the decision of the trial court denying her motion for a new trial.
 The relevant facts as revealed by the record establish that Brandt had been treated by Dr. Eric Polansky for chronic pain of both feet since May of 1991. In 1991, Dr. Polansky had diagnosed Brandt with acute plantar fasciitis, also called heel spur syndrome, in her right foot. In September of 1991, Brandt was diagnosed with pes cavovarous, commonly referred to as "cavavorous arch," in her left foot. In May of 1992, Brandt was diagnosed with tendonitis in both feet, and with acute bursitis and plantar fasciitis in her left foot. Brandt continued to experience pain in her left foot for the next several years, and during that time she received numerous cortisone shots for pain relief. Due to the amount of pain she had been experiencing from heel spurs, Dr. Polansky performed a plantar fasciotomy surgery on Brandt's left foot on June 29, 1995. The surgery had been performed on an outpatient basis in Dr. Polansky's office, and Brandt had been released in a walker cast.
On July 4, 1995, Brandt was a passenger in her automobile, driven by her son, Kenneth Brandt, when they were struck from the front as they were stopped at a stop sign. Defendant Donna R. Prickett's automobile was directly in front of Brandt's at an intersection when she pulled her car into the intersection, then reversed her automobile, backing into Brandt and her son. Brandt's automobile suffered a broken license plate cover and the front inside door covers were knocked loose.
Brandt claims that upon impact, her left foot slammed into the floor boards of the automobile three or four times, resulting in shooting pains. Brandt's son drove her to the emergency room at Upper Valley Medical Center Stouder Memorial Hospital ("Stouder"). At Stouder, Brandt complained of recurrent, burning and shooting pains in the foot. Brandt's left foot was x-rayed, and no fractures nor abnormalities were discovered. She was diagnosed with foot and chest muscle strains, and the emergency room physician referred her to her podiatrist, Dr. Polansky.
Brandt met with Dr. Rosen, Dr. Polansky's associate, on July 5, 1995. She indicated to him that she was experiencing pain in her left foot. Dr. Rosen made a diagnosis of "sprain/strain left foot, ankle" and "contusion or bruising of the surgery site."
After the accident, Brandt returned to work at Brown-Bridge Industries, where she was on her feet for approximately eight hours per day. Brandt continued to experience pain in her left foot. She continued to seek medical attention from Dr. Polansky, who eventually performed an MRI on her left foot in October of 1995. The MRI revealed a stress fracture to the third cuneiform bone in her left foot.
According to her patient chart at Dr. Polansky's office, Brandt's condition improved in January of 1996; however, from February through October of 1996, she again began experiencing a great deal of pain in her left foot. During this time she received numerous cortisone shots in her left foot for pain relief from tarsal tunnel syndrome and dorsal intermediate cutaneous nerve entrapment. On September 19, 1996, Brandt began treatment with Dr. Gary LaBianco at Dr. Polansky's office. Upon reviewing Brandt's medical records, Dr. LaBianco determined that Brandt suffered from a dislocation of the Lisfranc tendon in her left foot. Brandt underwent two surgeries by Dr. LaBianco to correct the dislocation, the first on December 3, 1996, and the second on January 22, 1998.
As a result of the July 4, 1995, accident, on June 19, 1997, Brandt filed a complaint against Prickett and Aetna Life Insurance Co. — Aetna Health Plans ("Aetna"), alleging claims for personal injury. Nationwide was brought into the action as Brandt's underinsurance carrier because Brandt's claims exceeded the policy limits of Prickett's insurance. Aetna was joined as an assignee in Brandt's claims because, as her health insurance carrier, it wanted to protect its interest in the payments it had made for Brandt's medical treatment.
On June 29, 1998, Brandt filed a motion for partial summary judgment on the issue of Prickett's liability. The trial court granted the motion on July 22, 1998, finding that Prickett was negligent and liable for the accident. Prickett was dismissed as a party on August 11, 1998, after she tendered her policy limits.
The jury trial began on November 12, 1998, to determine the issue of proximate causation and damages. Prior to the start of trial, Brandt argued for the admission of statements by Nationwide's claims representative Debra Nicholas made to Karen Mitchell, a paralegal for Brandt's trial counsel. The statement, submitted in a memorandum by Mitchell to Brandt's legal file, documented a telephone conference between Mitchell and Nicholas, which stated in pertinent part:
 Ms. Nicholas also stated to me that Nationwide's physicians have previously verified that despite the relatively low impact of the crash and the small amount of property damage, Ms. Brandt's injuries could have been as severe as claimed because of the nature of her injury and the vulnerability of foot {sic} at the time of the crash.
Brandt argued that under Evid.R. 801(D)(2), Nicholas' statement was an admission by a party opponent and thus was not hearsay. The trial court overruled Brandt's request on the record. The trial court noted that Nicholas' statement was not admissible because it was not an admission; the statement was made during settlement negotiations; and that the probative value would have been outweighed by the danger of unfair prejudice.
At trial, Nationwide presented testimony by their expert witness, Dr. G. James Sammarco, a board certified orthopedic surgeon. Based on his review of Brandt's medical records, he opined that Brandt's injuries were not proximately caused by the July 4, 1995, accident. Instead, Dr. Sammarco stated that Brandt's pain was from lateral column syndrome, a normal post-operative complication following plantar fasciotomy surgery, aggravated by her high arch. Dr. Sammarco further testified that Brandt's general numbness, tingling and throbbing was the result of numerous cortisone injections. He stated that the fracture to the cuneiform bone was the result of overuse with increased loading allowed to fall on the midfoot after Brandt's surgery. Finally, Dr. Sammarco believed that the injuries to the fourth and fifth metatarsal joints were the result of the lateral column syndrome, aggravated by the cavavarous arch, and the Lisfranc nonunion was a known complication resulting from the plantar fasciotomy.
Finally, Dr. Sammarco testified, to a reasonable degree of medical certainty, that the medical conditions of which Brandt complained after the July 4, 1995, accident were not due to the accident, but instead, were present prior to the impact. He based this opinion in part on the low impact of the crash, Brandt's medical records showing she had complained of heel pain around the time of her June 29, 1995, surgery, and the Stouder emergency room file indicating no symptoms of Brandt's condition.
After three days of trial, the jury returned a general verdict in favor of Nationwide. On December 14, 1998, Brandt filed a motion for a judgment notwithstanding the verdict or for a new trial. Brandt's motion contested the trial court's overruling of her request to admit Nicholas' testimony. She also argued that the verdict was against the manifest weight of the evidence. On January 4, 1999, Nationwide filed a memorandum in opposition. The trial court overruled the motion on January 6, 1999. Brandt now timely appeals the trial court's decision and judgment. Brandt asserts four assignments of error. We will address Brandt's first and second assignments of errors together as they are interrelated.
 I. The trial court erred in applying the rules of evidence indenying Brandt the right to present testimony of an admissionby a party-opponent (Nationwide) under Evid.R. 801(D)(2) onproximate cause, an essential element in Brandt's claim.
 II. The trial court abused its discretion when it overruled atimely filed Civ.R. 59(A)(9) motion for a new trial becausean error at law was made at trial in analyzing and applyingthe rules of evidence in denying Brandt the right to presenttestimony of an admission by a party-opponent (Nationwide)under Evid.R. 801(D)(2) on proximate cause an essentialelement of Brandt's claim. {Sic.}
In her first two assignments of error, Brandt argues that the trial court abused its discretion in excluding Mitchell's and Brandt's testimony to the "admission" by Nicholas, and that the trial court erred in overruling her motion for a new trial based on this exclusion. Brandt argues that the statement was relevant and powerful evidence that the injuries to Brandt's left foot were caused by the accident, and that the statement was an admission by a party opponent consistent with Evid.R. 801(D)(2) and therefore admissible.
The trial court found that Nicholas' statement to Mitchell, that Brandt's injuries could have been caused by the accident despite the low impact crash, was not an admission under Evid.R. 801(D)(2), and that its probative value was greatly outweighed by the danger of unfair prejudice. In reviewing the record, we find that the trial court did not abuse its discretion in excluding the testimony, and therefore we affirm the trial court's decision overruling Brandt's motion for a new trial.
"The trial court has broad discretion in determining the admissibility of evidence at trial." Davis v. Sun Refining andMarketing Co. (1996), 109 Ohio App.3d 42, 53. Furthermore, the reviewing court will not reverse the trial court's judgment for failure to admit or exclude evidence absent a materially prejudicial abuse of discretion. Rigby v. Luke County (1991),58 Ohio St.3d 269; Kirschbaum v. Dillon (1991), 58 Ohio St.3d 58. "The term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
Under Evid.R. 801(D)(2), a statement or admission against interest made by a party-opponent is not hearsay and thus is not subject to exclusion under Evid.R. 802. Included in this category are statements made by agents or employees concerning matters within the scope of the agency or employment, made during the existence of that relationship. Evid.R. 801(D)(2)(d). Furthermore, to be an admission, the statement must be a confession, concession or a voluntary acknowledgment made by a party of the "existence of a fact which is relevant to the cause of his adversary." Black's Law Dictionary (6 Ed.Rev. 1990) 47.
In her brief, Brandt relies on Crane v. Lakewood Hospital
(1995), 103 Ohio App.3d 129, and Parker v. Baldwin Manor NursingHome, Inc. (June 21, 1984), Cuyahoga App. No. 47714, unreported, as evidence that Nicholas' statement was an admission by a party-opponent. In both cases, the admissions were concessions of evidence of an element at issue in the case. The allowed admission in Crane, supra, was probative evidence that the hospital was negligent by showing that the vice president had knowledge of the existence of a condition which led to the accident injuring the plaintiff. Similarly, in Parker, supra, admissions by nursing home staff were not hearsay because they served as probative evidence that the staff knew of a resident's disruptive behavior which led to the plaintiff's injury.
In the instant case, we cannot find that Nicholas' statement to Mitchell and Brandt either admitted or conceded causation or the existence of any other fact relevant to Brandt's cause. It was a statement from a Nationwide representative that Brandt's injuries may have resulted from the accident, given her condition at that time, and not that they did in fact result from the accident. Thus, we find Brandt's reliance on Crane, supra, andParker, supra, to be mistaken.
If, at trial, Nationwide had presented evidence that Brant's injuries could not possibly have resulted from the automobile accident, then Nicholas' statement might have been material to rebut that evidence of impossibility. However, Nationwide did not offer evidence tending to show that the accident could not possibly have caused Brandt's injuries. To the contrary, Nationwide's expert, Dr. Sammarco, testified on cross-examination that "it is possible but not probable" that the accident aggravated Brandt's pre-existing condition. Therefore, any admission by an agent of Nationwide that it was possible that the accident aggravated Brandt's pre-existing condition was immaterial to the issues in the trial. Furthermore, even if the trial court had erred in excluding that evidence, the error would have been harmless in view of the fact that the jury had before it the concession by Nationwide's medical expert that the accident could possibly have aggravated Brandt's pre-existing condition.
Furthermore, we do not agree with Brandt's argument that the jury, and not the trial court, should have had the opportunity to determine if the statement was an admission under State v. DeHass
(1967), 10 Ohio St.2d 230, 231. In DeHass, the Ohio Supreme Court determined that in civil cases, the trier of fact is to weigh the evidence and the credibility of the witnesses. Id. In DeHass,supra, the court did not state that a jury should determine if a statement would qualify as an admission. To the contrary, such a question should be determined by the trial court, and not by a jury. "It is well-settled that the establishment of proximate cause through medical expert testimony must be by probability. At a minimum, the trier of fact must be provided with evidence that the injury was more likely than not caused by defendant's negligence. Opinions expressed with a lesser degree of certainty must be excluded as speculative." (Citation omitted) (Footnote omitted) Shumaker v. Oliver B. Cannon Sons, Inc. (1986),28 Ohio St.3d 367, 369. The Court in Shumaker, in the accompanying footnote, further stated in part that "[e]vidence which only shows that a condition could have been the result of an injury is "insufficient proof to warrant submission of the cause to the jury." Id. citing Drew v. Indus. Comm. (1940), 136 Ohio St. 499,501.
Additionally, we agree with the trial court and Nationwide that the statement was also properly excluded under Evid.R. 403, because its probative value was substantially outweighed by the danger of unfair prejudice. The jury had to determine if Brandt had proved her injuries were the result of the accident, using expert medical testimony that these injuries were proximately caused by the accident to a reasonable degree of medical certainty. Shumaker, supra, at 374. Admitting the testimony that the injuries "could have been" a result of the accident could have served to confuse the jury as to Brandt's burden of proof.
Nationwide argues additional reasons in support of the trial court's exclusion of the statement. However, as we have already stated that the statement was inadmissible because it was not an admission and that its probative value would have been greatly outweighed by the danger of unfair prejudice, we find the other arguments unnecessary.
With respect to the motion for a new trial issue, we must apply an abuse of discretion standard. Sharp v. Norfolk WesternRailway Co. (1995), 72 Ohio St.3d 307, 312. Based on the above-mentioned reasons in finding that the trial court did not abuse its discretion in excluding the testimony regarding the statement by Nicholas, we find that the trial court did not abuse its discretion in denying Brandt's motion for a new trial.
Brandt's first and second assignments of error are hereby overruled.
We will now address Brandt's third and fourth assignments of error together as they are interrelated.
 III. The jury's verdict in favor of Nationwide, Brandt'suninsured/underinsurance carrier, was not sustained by theweight of the evidence when (I) the trial court haddetermined as a matter of law the tortfeasor was negligent;(II) when there was uncontroverted proof that Brandt wasinjured in the crash caused by the tortfeasor's negligence;and (III) Brandt introduced evidence on all the elements ofcompensatory damage.
 IV. The trial court erred in overruling a timely-filed Civ.R.59(A)(6) motion for a new trial following the jury returninga verdict awarding no damages against Brandt'suninsured/underinsured carrier, Nationwide, when (i) thetrial court had determined as a matter of law the tortfeasorwas liable; (ii) there was uncontroverted proof that Brandtwas injured in the vehicle crash caused by the tortfeasor;and (iii) Brandt introduced evidence on all of the elementsof compensatory damage.
In her third and fourth assignments of error, Brandt argues that the verdict was against the manifest weight of the evidence, because the elements necessary to prove her injuries were caused by the accident were "uncontroverted." Brandt also argues that the trial court abused its discretion in denying her motion for a new trial based on this same argument.
"Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Construction Co.
(1978), 54 Ohio St.2d 279, syllabus. In considering whether the judgment of the trial court is against the manifest weight of the evidence, it is important that the reviewing court be guided by a presumption that the findings of the trier-of-fact are correct."Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 79-80. Furthermore, the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony; thus there is a strong presumption that the findings of the trier of fact are correct. Id. at 80.
Finally, "in order to set aside a damage award as inadequate and against the manifest weight of the evidence, a reviewing court must determine that the verdict is so gross as to shock the sense of justice and fairness, cannot be reconciled with the undisputedevidence in the case, or is the result of an apparent failure bythe jury to include all the items of damage making up theplaintiff's claim." Bailey v. Allberry (1993), 88 Ohio App.3d 432,435 (emphasis in the original).
Bearing this in mind, we proceed to the merits of Brandt's assigned errors.
In her argument, Brandt cites case law that a jury's verdict is not sustained by the weight of the evidence when (1) negligence has been adjudicated or determined, (2) the record contains uncontroverted proof that plaintiff was injured, and (3) evidence was introduced on all elements of compensatory damage. Vescuso v.Laura (1989), 63 Ohio App.3d 336; Starcher v. Adams (Mar. 25, 1997), Franklin App. No. 96APE07-884, unreported; Kennedy v.University of Cincinnati Hospital (Mar. 30, 1995), Franklin App. No. 94API09-1333, unreported.
In each of the three cases to which Brandt cites, strong evidence of proximate cause was presented, tying the plaintiffs' injuries to the incidents. In Vescuso, supra, defendant's and plaintiff's experts admitted that plaintiff suffered from neck strain resulting directly and proximately from the accident. Furthermore, in Starcher, supra, both parties produced evidence and were in agreement on the issue that the plaintiff incurred some injury proximately resulting from the defendant's negligence.Id. In Kennedy, supra, although the issue of proximate cause was in dispute, there existed strong evidence in the record that the plaintiff's injuries were the result of the disclosure of a false HIV report by the defendants. Based on these three cases, Brandt claims that the jury verdict was against the manifest weight of the evidence.
Upon review of the entire record, we do not find the jury's award for Nationwide to be against the manifest weight of the evidence. Contrary to Brandt's assertions on appeal, the evidence regarding her condition being caused by the accident was disputed and contradictory. To contrast Brandt's argument, the main issue sent to the jury for determination was the question of whether the accident proximately or directly caused Brandt's injuries. Unlike the cases Brandt relies on to support her claim that the verdict was against the manifest weight of the evidence, the issue remained controverted throughout the trial, and each party provided evidence to support their respective arguments.
It is true that Brandt diligently pursued her claims that the July 4, 1995, accident caused the injuries to her left foot. She provided evidence that she was examined the day following the accident by her podiatrist, whom she had been seeing for several years for various foot problems, and he diagnosed her with a "sprain/strain of the left foot and contusion or bruising of the surgery site." However, evidence was presented that Brandt's injuries were not discovered by the emergency room personnel at Stouder on the day of the accident, despite the x-rays and examination. Nationwide's medical expert, Dr. Sammarco, testified that in his opinion, to a reasonable degree of medical certainty, none of Brandt's injuries were proximately caused by the accident. He stated that the fracture of Brandt's third cuneiform bone and the dislocation of her left foot's Lisfranc tendon were not the result of the accident.
Based on the foregoing, we cannot say that the jury's finding in favor or Nationwide was against the manifest weight of the evidence. In the instant case, there was competent, credible evidence in which the jury could make a determination that the accident on July 4, 1995, did not proximately cause the injuries to Brandt. As such, the verdict was not against the manifest weight of the evidence, and the trial court did not abuse its discretion in overruling Brandt's motion for a new trial.
As such, Brandt's third and fourth assignments of error are overruled.
The judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Walter W. Reckless
William A. Dickhaut
Hon. Jeffrey M. Welbaum