DECISION AND JUDGMENT ENTRY
Dorothy I. Zimmerman and her husband, Charles Zimmerman, appeal the Jackson County Court of Common Pleas' decision granting summary judgment in favor of The Kroger Company. On appeal, the Zimmermans contend that they presented evidence giving rise to a genuine issue of material fact as to whether Kroger negligently caused her to fall and break her hip. Because the Zimmermans presented evidence that Kroger created the hazard in question, and evidence that Kroger knew or should have known about the hazard, we agree. Accordingly, we reverse the judgment of the trial court.
 I.
On the afternoon of September 23, 1998, the Zimmermans purchased groceries from the Kroger store on East Main Street in Jackson, Ohio. As they left the store, Mrs. Zimmerman tripped and fell. The injuries from the fall required Mrs. Zimmerman to undergo a total hip replacement surgery, extensive hospitalization, physical therapy, and in-home nursing care.
The Zimmermans filed a complaint alleging negligence and seeking compensation for Mrs. Zimmerman's medical bills and pain and suffering and for Mr. Zimmerman's loss of consortium. Kroger filed a motion for summary judgment, and the Zimmermans filed a motion contra. The depositions, affidavits and photographs submitted by the parties reveal the following facts.
When exiting the Jackson Kroger store, a customer must pass through two doors, an inner and an outer door. Specifically, the customer must pass through the inner exit door, turn left, and pass through the outer exit door into the parking lot. In other words, the inner and outer exit doors are located at a right angle to each other, such that a customer must walk in an "L" shaped pattern through a vestibule to exit the store. The inner and outer entrance doors are situated in a smaller "L" shaped configuration. An exiting customer has an entrance door on her left each time she passes through an exit door.
All four doors are equipped with sensory floor mats that sense the presence of a customer and cause the door to open automatically. A plastic divider, approximately three feet high by four feet long, separates the inner entrance door and its sensory floor mat from the inner exit door. In addition to the sensory floor mats, Kroger sometimes uses rubber-backed, movable carpet floor mats that measure approximately three feet wide by eight feet long. On the day of Mrs. Zimmerman's fall, Kroger had placed a movable floor mat in front of the inner entrance door in the vestibule, with the eight-foot length of the mat running parallel to the plastic divider between the inner and outer doors. A customer exiting the store would necessarily walk over the three-foot width of this mat after she passed through the inner exit door and turned left.
All four of the doors are glass. However, the bottom portion of each door has several metal bars running across it. These bars are designed to protect the doors from damages caused by carts striking the doors. The bars obstruct the view of the floor directly beyond the door.
The Zimmermans submitted the deposition testimony of Kroger store co-manager Kathi Gundlah. Gundlah stated that Kroger routinely uses a movable floor mat in front of the inner door in the vestibule in wet weather, and admitted that Mrs. Zimmerman fell on a dry day. Gundlah testified that the movable floor mats always "creep" during the course of a day. Kroger baggers are responsible for checking the mats frequently and straightening the mats when they are askew. Gundlah usually straightens the mat in the vestibule around a dozen times per day.
The deposition testimony of Gundlah and Connie Wiseman, a cashier on duty at Kroger on the day of Mrs. Zimmerman's fall, revealed that Kroger baggers pass through the entrance and exit doors four to six times every half hour. Each time a Kroger bagger assists a customer with taking groceries to his car, the bagger is to return the customer's cart and any stray carts the bagger finds in the parking lot. A bagger pushes a train of six or seven carts into the store approximately five times per hour. The baggers must jockey these trains of carts around the same right angle turn that customers traverse. Gundlah testified that one or two customers pushing single carts could not cause the mat to creep three or four inches.
The Zimmermans also submitted the affadavit of Donald Kadunc, a mechanical engineer, as an expert witness. Kadunc averred that he observed the movement of the floor mat at Kroger over the course of a sunny afternoon. Kadunc opined, to a reasonable degree of engineering probability, that normal customer traffic can not cause the mat to move. Kadunc further opined that the only factor contributing to the mat's movement was the Kroger baggers' practice of pushing trains of five to ten carts over the mat at hard right angles. Finally, Kadunc opined that it would take two or three hours for the mat to creep three or four inches up the plastic divider. Kroger filed a motion to strike Kadunc's affidavit from the record, and the Zimmerman's filed a motion contra.
Mr. and Mrs. Zimmerman's depositions revealed that, on the day of her fall, Mrs. Zimmerman passed through the inner exit door and turned left. Her foot caught on something, and she fell in front of the outer exit door. Mr. Zimmerman, who was following Mrs. Zimmerman with their cart, saw her fall and heard the rubber backing on the floor mat slap down onto the floor. After Mrs. Zimmerman fell, she and Mr. Zimmerman noticed that the lengthwise side of the floor mat had crept toward the exit door, and that the lengthwise edge had been pushed up against the plastic divider, such that the edge stood approximately four inches off the floor where it met the plastic divider. Gundlah and Wiseman also testified that the mat had crept approximately four inches up against the divider, and Gundlah stated that the mat was six inches away from its normal position.
Based upon this evidence, the trial court determined that the Zimmermans did not know the cause of Mrs. Zimmerman's fall and that they failed to produce any evidence that Kroger knew or should have known that the floor mat was out of place at the location of Mrs. Zimmerman's fall. Accordingly, the trial court granted summary judgment in favor of Kroger. The trial court never ruled on Kroger's motion to strike Kadunc's affadavit.
The Zimmermans appeal the trial court's judgment, asserting the following assignment of error:
 I. The trial court erred in sustaining defendant-appellee's motion for summary judgment.
 II.
Summary judgment is appropriate only when it has been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56 (A). See Bostic v. Connor (1988),37 Ohio St.3d 144, 146; Morehead v. Conley (1991), 75 Ohio App.3d 409,411. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the opposing party's favor. Doe v. First United Methodist Church
(1994), 68 Ohio St.3d 531, 535.
The burden of showing that no genuine issue of material fact exists falls upon the party who moves for summary judgment.Dresher v. Burt (1996), 75 Ohio St.3d 280, 294, citing Mitseff v.Wheeler (1988), 38 Ohio St.3d 112, 115. However, once the movant supports his or her motion with appropriate evidentiary materials, the nonmoving party "may not rest upon mere allegations or denials of his pleadings, but his response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56 (E); Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, 111; Dresher, supra at 294-95.
In reviewing whether an entry of summary judgment is appropriate, an appellate court must independently review the record and the inferences that can be drawn from it to determine if the opposing party can possibly prevail. Morehead,75 Ohio App.3d at 411-12. "Accordingly, we afford no deference to the trial court's decision in answering that legal question." Id.
See, also, Schwartz v. Bank-One, Portsmouth, N.A. (1992),84 Ohio App.3d 806, 809.
The Zimmermans based their personal injury claim upon a theory of negligence. In an action for negligence, the plaintiff bears the burden of establishing the existence of "a duty, a breach of that duty and injury resulting proximately therefrom." Mussivandv. David (1989), 45 Ohio App.3d 314, 318. Ohio law presumes that each party exercised ordinary care until one party produces evidence to the contrary. Wise v. Timmons (1992), 64 Ohio St.3d 113,116, citing Biery v. Pennsylvania RR. Co. (1951), 156 Ohio St. 75, paragraph two of the syllabus.
A shopkeeper owes its customers, who are business invitees, a duty of ordinary care in maintaining the premises in a reasonably safe condition. Holdshoe v. Whinery (1968), 14 Ohio St.2d 134,137; Keiser v. Giant Eagle, Inc. (1995), 103 Ohio App.3d 173,176. A shopkeeper does not, however, carry a duty to protect its customers from dangers that are so obvious and apparent that the customers could reasonably be expected to discover them and take necessary precautions to protect themselves from harm. Paschal v.Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 204; Sidle v.Humphrey (1968), 13 Ohio St.2d 45, paragraph one of the syllabus.
The fact that an invitee falls while on a shopkeeper's premises does not give rise to an inference or presumption of negligence.Hodge v. K-Mart Corp. (Jan. 18, 1995), Pike App. No. 93CA528, unreported, citing Parras v. Standard Oil Co. (1953), 160 Ohio St. 315. Rather, "[I]t is incumbent on the plaintiff to show how and why any injury occurred — to develop facts from which it can be determined by a jury that the Defendant failed to exercise due care and that such failure was a proximate cause of the injury." Id., quoting Boles v. Montgomery Ward (1950),153 Ohio St. 381; Stamper v. Middletown Hosp. Assn. (1989),65 Ohio App.3d 65, 67-68. The plaintiff must offer proof that: (1) the hazard was created by the negligent act of the shopkeeper; or (2) the shopkeeper had or, in the exercise of ordinary care, should have had notice of the hazard; or (3) the shopkeeper was negligent in creating a permanent and continuing dangerous condition which caused the injury. Id., quoting Moran v.Gershow's Super, Mkts., Inc. (1956), 102 Ohio App. 408; Hayes v.Wendy's Internatl., Inc. (Feb. 16, 1999), Warren App. No. CA98-07-074, unreported. If the shopkeeper created the hazardous condition, then we presume that shopkeeper had knowledge or notice of the condition of at issue. Crane v. Lakewood Hosp.
(1995), 103 Ohio App.3d 129, 136, citing Presley v. Norwood
(1973), 36 Ohio St.2d 29, 31.
 A.
Kroger contends that the fact that no one observed the mat just prior to Mrs. Zimmerman's fall is fatal to her case, because she presented no evidence that a hazard created by Kroger existed prior to her fall or that Kroger knew or should have known about the hazard. However, the evidence in the record and the reasonable inferences therefrom indicate that the hazard, i.e.,
the curled mat, existed prior to Mrs. Zimmerman's fall. Specifically, Gundlah's testimony that the mat could not have crept that far from one or two customers walking through gives rise to the reasonable inference that the mat curled up over a significant period of time or due to a bagger pushing a large stack of carts across the mat. This, combined with evidence that baggers passed over the mat every few minutes and were instructed to check the mat each time, may cause a reasonable person to conclude that Kroger either caused the mat to creep up or should have known that the mat had crept up. Thus, a genuine issue of material fact exists regarding whether Kroger created the hazard and regarding whether Kroger should have known about the hazard.
Kadunc's affidavit also constitutes evidence that Kroger negligently created the hazard by using the same entrance for carts and customers, configuring the entrance at a hard right angle, and using the floor mat in dry weather. As the parties noted, the trial court did not rule on Kroger's motion to strike Kadunc's affidavit. Although the parties seem to assume that the trial court intended to grant the motion to strike, the general rule is that, when the trial court fails to rule on a motion, we presume that the trial court overruled the motion. State v.Rozell (June 20, 1996), Pickaway App. No. 95CA17, unreported. However, irrespective of the trial court's intended ruling on Kadunc's affidavit, the Zimmermans presented ample evidence in this case to withstand a motion for summary judgment with or without Kadunc's opinion.
 B.
Kroger also insists that, even if the Zimmermans presented evidence establishing a genuine issue of material fact regarding whether it caused or should have known about the hazard, the Zimmermans cannot recover because they are not certain that the floor mat caused Mrs. Zimmerman to fall. As Kroger asserts, if a plaintiff in a slip and fall action cannot identify what caused her to fall, the trial court does not err by granting summary judgment in the defendant's favor. Stamper v. Middletown Hosp.Assn. (1989), 65 Ohio App.3d 65, 67-68; Howard v. J.T. Smith,
(Mar. 30, 1998), Butler App. No. CA97-07-136, unreported.
Mrs. Zimmerman testified in her deposition that she could not recall her fall, and no witness observed what caused Mrs. Zimmerman to fall. However, the testimony also revealed that Mrs. Zimmerman could not have caused the mat to rest against the plastic divider as it lay when the Zimmermans, Gundlah and Wiseman observed it after her fall. Additionally, Mr. Zimmerman heard the mat slap down onto the floor as Mrs. Zimmerman fell, as if her foot caught under the mat, and then dropped it. Considering this testimony in the best light, the Zimmermans showed that Mrs. Zimmerman fell due to the raised edge of the mat. To the extent she was unsure on all the facts, that lack of clarity would be an issue of credibility for the trier of fact to resolve. This is not a case where the plaintiff has no idea, beyond pure speculation, how her accident happened. Hayes v.Wendy's Internatl., Inc., supra, citing Miller v. Adamson dbaAdamson's-Buford Grocery Store, (Sept. 16, 1996), Brown App. No. CA96-02-007, unreported. Therefore, the Zimmermans presented sufficient proof of causation to withstand Kroger's motion for summary judgment.
 C.
Finally, Kroger asserts that, if the floor mat created a hazard, the hazard was open and obvious. As Kroger asserts, a shopkeeper does not have a duty to protect its customers from dangers that are so obvious and apparent that the customers could reasonably be expected to discover them and take necessary precautions to protect themselves from harm. Paschal,18 Ohio St.3d at 204; Sidle, 13 Ohio St.2d at paragraph one of the syllabus. In Howard v. J.C. Penny Co. (Nov. 3, 1994), Franklin App. No. 94APE04-469, unreported, the court determined that the store was entitled to summary judgment where the plaintiff-customer tripped on a three-foot by eight-foot floor mat placed on a tiled aisle. Likewise, in Davies v. Akron CityClub (Aug. 23, 1978), Summit App. No. C.A. 8841, unreported, the plaintiff caught her toe under a floor mat as she exited an elevator. The court determined that the evidence showed that the mat was too large and colorful for a reasonably cautious person to overlook, and therefore the court granted summary judgment in favor of the defendant. Id.
The instant case is readily distinguishable from the factual situations presented in Howard and Davies. Unlike the floor mat in Howard, in this case a door with cart-guard bars and a plastic divider obscured Mrs. Zimmerman's view of the floor mat. Thus, this case more closely resembles Tandy v. St. Anthony Hosp. (Nov. 29, 1988), Franklin App. No. 88AP-551, unreported, where the defendant placed a floor mat just outside of a door, and the door obscured the plaintiff's view of the floor mat. Additionally, unlike the floor mat in Davies, the floor mat in this case was curled up approximately four inches off the floor. While the mat that Mrs. Zimmerman tripped on may have been just as large and colorful as the mat in Davies, the hazard, i.e., the raised portion of the mat, was about four inches high in this case. Thus, Kroger was not entitled to summary judgment based upon its claim that the hazard that Mrs. Zimmerman tripped on was open and obvious.
 III.
In conclusion, upon reviewing the evidence in the record and construing all reasonable inferences in favor of the Zimmermans, we find that the Zimmermans presented evidence giving rise to a genuine issue of material fact regarding whether Kroger negligently caused Mrs. Zimmerman to fall and break her hip. Therefore, we find that the trial court erred by granting summary judgment in favor of Kroger.
Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE REVERSED and the cause remanded to the trial court for further proceedings consistent with this opinion, costs herein taxed to appellee.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Jackson County Court of Common Pleas to carry this judgment into execution.
Any stay previously granted by this Court is hereby terminated as the date of this Entry.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Abele, J. and Harsha, J.: Concur in Judgment and Opinion.
 _______________________________ Roger L. Kline, Presiding Judge