**STOCKDALE et al., Appellees,**

v.

**BABA, Appellant.**

[Cite as *Stockdale v. Baba,* 153 Ohio App.3d 712, 2003-Ohio-4366.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–402.

Decided Aug. 19, 2003.

Jones, Day, Reavis & Pogue and Shawn J. Organ, for appellees.

Whiteside & Whiteside and Elizabeth Whiteside Whitman, for appellant.

PETREE, Presiding Judge.

{¶ 1} On August 3, 2000, plaintiffs, Tera Stockdale and Anne Spurgeon, filed a complaint in the Franklin County Court of Common Pleas alleging the following four causes of action: (1) intentional infliction of emotional distress; (2) negli-

gence and/or negligence per se; (3) breach of contract; and (4) depression, fraud, and malice. Defendant, John N. Baba, filed an answer and counterclaim. On May 10, 2001, defendant filed a motion for summary judgment and, in the alternative, for partial summary judgment, based upon a settlement agreement entered into previously between the plaintiffs and defendant on March 30, 1999, and on the basis of an absence of serious emotional distress arising out of any act defendant committed after the date of the March 30, 1999 release. Plaintiffs also filed a motion for summary judgment on May 10, 2001. Defendant then filed a motion to strike. By decision and entry dated June 21, 2001, the trial court denied defendant's motion to strike. The trial court also denied plaintiffs' motion for summary judgment and defendant's motion for summary judgment.

{¶ 2} On November 5, 2001, defendant filed a motion in limine requesting the court to exclude evidence relating to defendant's behavior toward plaintiffs prior to the execution of the settlement agreement and also evidence of defendant's conviction for menacing by stalking. The trial court granted defendant's motion regarding the menacing-by-stalking conviction; however, the court stated that plaintiffs would be allowed to introduce evidence of defendant's criminal prosecution, evidence that he had been placed on probation, and evidence that defendant's probation officer had determined that he had violated the terms of his probation. The trial court also determined that plaintiffs would be permitted to introduce into evidence a limited number of the sexually graphic, violent, and abusive letters that defendant had sent to plaintiffs prior to March 30, 1999.

{¶ 3} The matter proceeded to trial before a jury on February 12, 2002. At the close of plaintiffs' case, the trial court granted defendant's motion for a directed verdict as to plaintiffs' claims for intentional infliction of emotional distress, finding that plaintiffs had failed to demonstrate emotional distress that was severe and debilitating as required. The court also directed a verdict in favor of defendant on plaintiffs' claims for negligence, fraud, depression, and malice. The trial court allowed the jury to consider plaintiffs' claim for breach of contract. The trial court further found that plaintiffs had demonstrated that defendant had committed the common-law tort of stalking and instructed the jury accordingly. The jury returned verdicts in favor of plaintiffs, awarding both compensatory and punitive damages and attorney fees. Defendant moved for judgment notwithstanding the verdict; however, this motion was denied by the trial court.

{¶ 4} Thereafter, defendant filed a notice of appeal in this court asserting the following 17 assignments of error:

{¶ 5} "[1.] The trial court erred and acted contrary to law in failing to grant defendant's motion for summary judgment.

{¶ 6} "[2.] The trial court erred and acted contrary to specific statutes, rules, and controlling authority by permitting plaintiffs to introduce evidence of misdemeanor criminal charges brought against defendant and his alleged conviction (which at the time was on appeal and was later reversed on appeal) and conditions of probation.

{¶ 7} "[3.] The trial court erred, acted contrary to law, and abused its discretion by permitting testimony by the supervisor of defendant's former probation officer and by permitting testimony of a city prosecutor who was not even involved in the criminal case relating to defendant.

{¶ 8} "[4.] The trial court erred, acted contrary to law, and abused its discretion by permitting plaintiffs to read and testify to, and introduce into evidence the contents of letters written to them by defendant when plaintiffs had settled their civil claim related to the letters and had executed a release.

{¶ 9} "[5.] The trial court erred, acted contrary to law, and abused its discretion by permitting plaintiffs to introduce into evidence of matters which had been settled by the parties and for which plaintiffs had released defendant from liability including evidence of the alleged conduct of defendant upon which the misdemeanor charges were based as to plaintiffs.

{¶ 10} "[6.] The trial court erred, acted contrary to law, and abused its discretion by permitting plaintiffs to introduce into evidence Internet public message board postings which defendant did not admit to writing when the sole foundation for relevancy of the postings was plaintiffs' testimony that they believed defendant wrote the postings.

{¶ 11} "[7.] The trial court erred, acted contrary to law, and abused its discretion by permitting improper opinions by lay witnesses that public message board postings posted under several different names were all written by defendant.

{¶ 12} "[8.] The trial court erred and acted contrary to law by instructing the jury that it could award damages for plaintiffs' emotional distress on their breach of contract claim in the absence of any evidence of severe or debilitating emotional distress, the absence of which the trial court had previously correctly ruled precluded any recovery by plaintiffs on tortious infliction of emotional distress.

{¶ 13} "[9.] The trial court erred and acted contrary to law by instructing the jury that it could award damages for plaintiffs' claimed emotional distress when plaintiffs introduced no expert testimony whatsoever related to their emotional distress.

{¶ 14} "[10.] The trial court erred and acted contrary to law by instructing the jury that as a matter of law the Settlement Agreement among the parties was a

contract which the parties understood the breach of which was likely to result in psychological damage.

{¶ 15} "[11.] The trial court erred and acted contrary to law by instructing the jury that it could award punitive damages for plaintiffs' breach of contract claim when plaintiffs' prayer for relief did not include a request for such damages.

{¶ 16} "[12.] The trial court erred and acted contrary to law by giving the jury an 'eggshell skull' instruction that defendant was required to take plaintiffs as he found them, even though plaintiffs' alleged predisposition to emotional distress had been the subject of a previous settlement with defendant, and plaintiffs had released defendant from liability for that predeposition, necessarily including any 'eggshell skull' resulting therefrom.

{¶ 17} "[13.] The trial court erred and acted contrary to law by instructing the jury that it could award plaintiffs damages for a common law tort action of 'stalking,' even though plaintiffs failed to plead such a tort in their complaint.

{¶ 18} "[14.] The trial court erred and acted contrary to law by instructing the jury that it could award plaintiffs punitive damages for a common law tort action of 'stalking,' when R.C. 2307.60 specifically prohibits such an award in a statutory civil action based upon violation of a criminal statute.

{¶ 19} "[15.] The trial court erred and acted contrary to law by instructing the jury that it could award punitive damages for mere, ordinary insult to plaintiffs.

{¶ 20} "[16.] The trial court erred in overruling defendant's motion for directed verdict as to plaintiff Spurgoeon [sic].

{¶ 21} "[17.] The trial court erred and abused its discretion in awarding attorney fees to plaintiffs' attorney without conducting an evidentiary hearing as to the reasonableness and amount of such fees."

{¶ 22} Although at trial counsel for defendant made every effort to confine the evidence submitted to the jury to events which took place after March 1999, it is impossible to review the case without taking into account those acts which occurred prior to March 1999. The trial court found and, as will become apparent, this court agrees, that the events which took place after March 1999 could not have been viewed by the jury and cannot be viewed by this court in isolation without considering the nature of the events which occurred prior to March 1999.

{¶ 23} The origin of plaintiffs' lawsuit dates back to 1996 when defendant began the course of action which ultimately led to defendant being charged with menacing by stalking. Over a period of two years, defendant sent approximately 100 letters to plaintiffs, the content of which was obscene, derogatory, violent, and pornographic. Many of the letters sent to plaintiffs contained sexually

explicit, disturbing, and disgusting language. Other letters were violent and threatening in nature, such as one received by plaintiff Spurgeon stating that she should commit suicide and that he hoped she would bê raped. During this time, defendant also telephoned plaintiff Stockdale frequently and even came to her home and knocked on the door. Eventually, plaintiffs learned defendant's identity and he was charged with menacing by stalking. Ultimately, defendant pled no contest to the charges, was placed on probation, and entered into a settlement agreement with plaintiffs whereby he paid them a total of $14,500 and agreed to end all contact with plaintiffs. Specifically, subparagraph (F) of the settlement agreement provides as follows:

{¶ 24} "Baba agrees to never contact either Stockdale or Spurgeon, by any method, either in person, through the United States Mail, or through telephonic or computer email contact, or by and through third parties, excepting attorneys in the event of a good faith allegation of a breach of this agreement."

{¶ 25} Plaintiffs also signed a release from all claims and rights of action which they either now had or which may accrue arising out of the contact and/or relationship between the plaintiffs and defendant, including personal injuries, damage and lawsuits which were presently known as well as those which were unknown but which may develop or be discovered in the future for defendant's actions prior to the signing of the settlement agreement.

{¶ 26} Despite the criminal action, being placed on probation, the settlement agreement, and the financial penalties, defendant began posting messages to a local internet message board in January 2000. The website to which defendant began posting messages was "Cringe.com," which is a website utilized by local Columbus musicians. Both plaintiffs had been and were members of local Columbus area bands. It had been through the Cringe.com website that defendant had originally obtained personal information about plaintiffs that enabled him to contact plaintiff Stockdale. Plaintiff Stockdale was the contact person for two bands of which she was a member. Plaintiff Stockdale began seeing postings on the website's message board, which can be described as insulting, especially towards female bands and female band members, as well as spiteful, even hateful. Several of these postings mentioned plaintiff Stockdale by name. Over the course of two months, the postings became increasingly aggressive. The postings were signed by fictitious names, including the following: "Mathias," "MS," "Caligula," "Roger St. Jean Smythe," "Little Boots," "CC DeMarco," "CAL," and "Don Pijote." Defendant did admit, at some point in time, that he posted the messages that were signed under the fictitious name "Don Pijote." At trial, plaintiffs were permitted to submit postings under the other fictitious names as well, as it was plaintiffs' belief that, because of the style of the writing and the word choice utilized, the defendant had indeed posted those

messages as well. Plaintiffs testified that, after receiving approximately 100 letters from defendant over the course of two years and after talking with him on the telephone, they were acquainted with his writing and speaking styles. The trial court determined that the jury could review the letters as well as the website postings and determine for themselves whether defendant had indeed posted other messages at the Cringe.com website besides those postings which he acknowledged he did post.

{¶ 27} Between January and February 2000, approximately 80 messages were posted to the Cringe.com website that plaintiffs assert were authored by defendant. Plaintiff Stockdale testified that, at the same time the website postings began, she then began receiving unidentified telephone calls. She and plaintiff Spurgeon both testified concerning how frightened, anxious, and terrified they had felt prior to March 1999, when they signed the settlement agreement with defendant. Both plaintiffs testified that, although they both believed that their lives had been forever changed and that they would never be the same again, both of them felt hopeful that they could put the matter behind them. Plaintiffs testified that, after signing the settlement agreement, they believed that the matter was over and that they no longer had a reason to worry about defendant harassing, threatening, and terrorizing them further. However, when the website postings began in January 2000, both plaintiffs testified that all the fear, anxiety, and stress came back and that, in some ways, it was even worse. Both plaintiffs testified that they now believe that defendant does not know the limits and that he is not able to control his obsessive, hateful attitude and behavior towards them. Both plaintiffs testified that they found themselves again looking over their shoulders all of the time wondering whether defendant was there watching them. Both plaintiffs testified that, in addition to other life stresses that perhaps caused them to have difficulty sleeping, that the renewed contact with defendant caused them to be more frightened. Plaintiff Stockdale testified that she had received counseling before March 1999, but that, because of her schedule, insurance problems, and the fact that her counselor was no longer available, she was not able to continue with, increase, or renew her counseling in January 2000. Other witnesses testified that both plaintiffs had seemed to feel better after the settlement agreement had been signed in March 1999, and that they both had a sense of hope. However, the witnesses testified that, when the website postings began in January 2000, plaintiffs were noticeably upset, frightened, anxious, and nervous and that they had a sense of disbelief that defendant would actually contact them again.

{¶ 28} Plaintiff Stockdale testified that she contacted defendant's probation officer regarding the website postings. All of the insulting, derogatory, personal postings made under any and all fictitious names stopped after she contacted

defendant's probation officer. Anita Bush, the supervisor for defendant's probation officer, testified that the probation department considered defendant's conduct to be a violation of the terms of his probation.

{¶ 29} Plaintiffs filed their lawsuit in the Franklin County Court of Common Pleas and asserted the following causes of action: (1) intentional infliction of emotional distress; (2) negligence and/or negligence per se; (3) breach of contract; and (4) depression, fraud, and malice. As stated previously, the trial court had denied both plaintiffs' and defendant's motions for summary judgment. At the close of evidence, the trial court granted defendant's motion for a directed verdict on the causes of action of intentional infliction of emotional distress, negligence and depression, fraud, and malice, but permitted the jury to consider the breach-of-contract claim as well as a civil-stalking claim. The jury verdict was unanimous in favor of plaintiffs and the jury awarded plaintiffs $10,000 each on their breach-of-contract claim, and $25,000 each in punitive damages, as well as attorney fees. Thereafter, defendant filed a notice of appeal. Plaintiff Stockdale filed a pro se notice of appeal asserting that the trial court erred in denying plaintiffs' motion for summary judgment. Inasmuch as plaintiff Stockdale has failed to file a brief or otherwise make any arguments asserting her cross-appeal, the matter is deemed waived.

{¶ 30} In his first assignment of error, defendant argues that the trial court erred in failing to grant him summary judgment as to plaintiffs' claims for intentional infliction of emotional distress.

{¶ 31} Summary judgment, Civ.R. 56, is a procedural device designed to terminate litigation and to avoid a formal trial where there is nothing to try. It must be awarded with caution, resolving all doubts and construing evidence against the moving party, and granted only when it appears from the evidentiary material that reasonable minds can reach only an adverse conclusion as to the party opposing the motion. See *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615.

{¶ 32} Pursuant to Civ.R. 56(C), summary judgment may be rendered where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Summary judgment may not be rendered unless it appears that reasonable minds can come to but one conclusion and that conclusion is adverse to the parties against whom this motion is made.

{¶ 33} The moving party has a burden of showing that there is no genuine issue as to any material fact as to the critical issues. The opposing party has a duty to submit affidavits on the material submitted by Civ.R. 56(C) to show genuine issues for trial. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46.

{¶ 34} Defendant argued in his motion and argues again here that, pursuant to plaintiffs' complaint as well as their deposition testimony, neither plaintiff demonstrated that she suffered emotional distress to an extent which is compensable pursuant to Ohio law.  Defendant argues that plaintiffs cannot recover for their emotional distress under any cause of action, asserting that Ohio permits recovery only for severe or extreme emotional distress.  Defendant cites *Yeager v. Local Union 20* (1983), 6 Ohio St.3d 369, 453 N.E.2d 666.  In *Yeager,* the Ohio Supreme Court recognized the cause of action for the intentional infliction of emotional distress.  The court described the nature of the serious and emotional distress required in order to recover for infliction of emotional distress in Ohio as follows:

{¶ 35} "One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."  Syllabus.

{¶ 36} Defendant also cites *Powell v. Grant Med. Ctr.,* 148 Ohio App.3d 1, 2002-Ohio-443, 771 N.E.2d 874, wherein this court upheld the trial court's entry granting summary judgment on plaintiffs' claims for negligence or intentional infliction of emotional distress.  In *Powell,* plaintiffs were children of the decedent whose body had been damaged, after her death, when a tray in the hospital morgue had broken, causing the decedent's body to fall.  The decedent had fallen on her face and had sustained bruising and a laceration.  Plaintiffs filed a complaint seeking to recover damages for emotional distress allegedly suffered as a result of the injuries to the decedent's body arising from its fall to the floor and the hospital's handling of the incident.  The trial court concluded that, although the decedent was plaintiffs' mother, plaintiffs did not come forward with evidence that their feelings rose to the level of a serious or debilitating injury and that they had presented no evidence that defendant acted intentionally or had any knowledge that the telescoping trays were malfunctioning or would collapse and cause the decedent to fall.  The trial court granted summary judgment in favor of the hospital.

{¶ 37} On appeal, this court affirmed the trial court's decision.  This court noted that in *Paugh v. Hanks* (1983), 6 Ohio St.3d 72, 6 OBR 114, 451 N.E.2d 759, the Ohio Supreme Court explained the standard of "serious" emotional distress, in a cause of action for the negligent infliction of emotional distress, as follows:

{¶ 38} "* * * By the term 'serious,' we of course go beyond trifling mental disturbance, mere upset or hurt feelings.  We believe that serious emotional distress describes emotional injury which is both severe and debilitating.  Thus, serious emotional distress may be found where a reasonable person, normally

constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case. * * *

{¶ 39} "A non-exhaustive litany of some examples of serious emotional distress should include traumatically induced neurosis, psychosis, chronic depression, or phobia. * * *"

{¶ 40} This court went on to note that expert opinion is frequently helpful in proving the genuineness of a plaintiff's claim; however, this court noted that expert medical testimony was not required and that a plaintiff could submit their own testimony as well as the testimony of lay witnesses acquainted with plaintiff as to any marked changes in the emotional or habitual makeup of plaintiff following a defendant's allegedly culpable conduct. Last, this court noted that the "seriousness" of the emotional distress is to be decided on a case-by-case basis.

{¶ 41} This case presented a unique, one-of-a-kind fact pattern for the trial court to consider. Upon consideration of defendant's motion, it was already apparent to the trial court that a decision would have to be made, at trial, as to whether plaintiffs would be permitted to present evidence of defendant's conduct prior to March 1999. In conjunction with that, it was clear that evidence of plaintiffs' emotional state prior to March 1999 might be relevant in a trial. Although it was unclear, at that point in time, how much emotional distress plaintiffs were going to be able to demonstrate, it was clear that plaintiffs did have evidence to submit going to all of the elements of the cause of action. Specifically, the trial court noted as follows:

{¶ 42} "In order to defeat a motion for summary judgment on a claim of intentional infliction of emotional distress, a party must present sufficient evidence to create a genuine issue of material fact on the following elements:

{¶ 43} "(1) the actor either intended to cause emotional distress or knew or should have known that actions taken would result in serious emotional distress to the plaintiff;

{¶ 44} "(2) the actor's conduct was extreme and outrageous;

{¶ 45} "(3) the actor's actions were the proximate cause of the plaintiff's psychic injury; and

{¶ 46} "(4) the mental anguish suffered by the plaintiff is serious.

{¶ 47} "*Ashcroft v. Mt. Sinai Medical Center* (1990), 68 Ohio App.3d 359 [588 N.E.2d 280].

{¶ 48} "Defendant contends that Plaintiffs cannot demonstrate that Defendant's actions in posting to the Internet message board [were] extreme and outrageous, even if the content of his quotation was offensive. However, Plain-

tiffs' claim is not based solely on the fact that his message was offensive or vulgar; rather, it is based largely on the fact that they believed Defendant was again stalking them despite having faced criminal charges for his behavior. Plaintiffs fear that Defendant is so obsessed with them, that he would risk imprisonment in order to contact them. (Stockdale depo. p. 128.) The Court finds that whether Defendant's actions were extreme and outrageous is a question of fact. Defendant further argues that Plaintiffs cannot demonstrate that they suffered a severe and debilitating mental injury as the result of his conduct. However, upon review of the evidence presented, the Court finds that this is also an issue to be determined by the trier of fact. Therefore, Defendant is not entitled to summary judgment on Plaintiffs' claim for intentional infliction of emotional distress."

{¶ 49} Based upon a review of the record and given the fact that this case is one of first impression, the trial court found, and this court agrees, that the evidence plaintiffs had presented, prior to the trial, was sufficient to withstand a motion for summary judgment filed by defendant. As such, this court finds that the trial court did not err in denying defendant's motion for summary judgment and defendant's first assignment of error is not well taken and is overruled.

■ {¶ 50} Defendant's second, third, fourth, and fifth assignments of error are interrelated and will be addressed together. Defendant contends that the trial court erred by permitting plaintiffs to introduce evidence of misdemeanor criminal charges brought against defendant and his alleged conviction, by permitting the supervisor of defendant's former probation officer and a city prosecutor to testify involving the nature of the criminal case relating to defendant, and by permitting plaintiffs to read, testify to, and introduce into evidence the contents of letters written to them by defendant prior to the signing of the settlement agreement in March 1999, as well as evidence and testimony regarding defendant's actions prior to March 1999 for which plaintiffs had released defendant from liability. For the reasons that follow, these assignments of error are not well taken and are overruled.

{¶ 51} Central to these assignments of error is the issue of whether it was permissible to permit plaintiffs to introduce any evidence regarding defendant's conduct prior to March 1999, as well as evidence concerning the emotional harm caused plaintiffs by virtue of his pre-March 1999 behavior. As a general rule, all relevant evidence is admissible unless otherwise provided. See Evid.R. 402. Pursuant to Evid.R. 403(A), "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 52} Evid.R. 401 defines "relevant evidence" as follows:

{¶ 53} " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

{¶ 54} The trial court enjoys broad discretion in the admission and exclusion of evidence and will not be reversed absent a clear abuse that materially prejudices the opposing party. *State v. Hymore* (1967), 9 Ohio St.2d 122, 128, 38 O.O.2d 298, 224 N.E.2d 126. In the application of the abuse-of-discretion standard, a court sitting in review may not substitute its judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301.

{¶ 55} In his second and third assignments of error, defendant contends that plaintiffs should not have been permitted to introduce evidence of the misdemeanor criminal charges, which had been brought against him for menacing by stalking.

{¶ 56} Defendant asserts that Evid.R. 803(21) does not permit a misdemeanor conviction or convictions on a no-contest plea from ever being introduced into evidence. Evid.R. 803 provides exceptions to the hearsay rule and notes that the following are not excluded by the hearsay rule even though the declarant is available as a witness:

{¶ 57} "Judgment of previous conviction

{¶ 58} "Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of no contest or the equivalent plea from another jurisdiction), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment, but not including, when offered by the Government in a criminal prosecution for purposes other than impeachment, judgments against persons other than the accused. The pendency of an appeal may be shown but does not affect admissibility."

{¶ 59} Defendant argues that his misdemeanor conviction, a no-contest plea, was not admissible into evidence under Evid.R. 803(21).

{¶ 60} However, Evid.R. 404(B) provides as follows:

{¶ 61} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

{¶ 62} Upon review of the transcript, this court notes that the trial court went to great lengths to ensure that plaintiffs, plaintiffs' counsel, and plaintiffs'

witnesses did not testify regarding defendant's actual conviction for menacing by stalking. Instead, witnesses testified that charges had been brought against defendant for menacing by stalking. Thereafter, defendant entered into a settlement agreement with plaintiffs whereby he promised never to have any contact with them again and they promised not to speak to anyone about the circumstances which led up to defendant being charged with menacing by stalking. Further, testimony was elicited that defendant had been placed on probation and that defendant's probation officer had considered his conduct in making the postings to the website to be a violation of his probation.

{¶ 63} Contrary to defendant's assertions, this evidence was relevant to plaintiffs' case, and the trial court did not err in admitting this evidence. Part of plaintiffs' argument, demonstrating their serious emotional distress, was that the threat of possible prison time was insufficient to restrain defendant from engaging in stalking behavior again. Obviously, any evidence that plaintiffs presented regarding anything that happened prior to March 1999 was going to be prejudicial to defendant to a certain extent. However, the trial court concluded, and this court agrees, that a certain amount of pre–1999 evidence was necessarily admissible in plaintiffs' case.

{¶ 64} The admissibility of evidence lies within the sound discretion of the trial court and only the clearest abuse of discretion will result in a reversal of a trial court's ruling on the admissibility of evidence. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. Reversal under this standard requires a showing that the trial court's attitude is unreasonable, arbitrary, or unconscionable. See *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. Nothing in this record indicates that the trial court's decision in permitting evidence concerning the charges brought against defendant and the fact that he had been placed on probation, constituted an unreasonable, arbitrary, or unconscionable decision.

{¶ 65} With regard to the prosecutor who testified, defendant argued at trial that he should not be permitted to testify because his testimony would inflame the jury and because he was not provided the witness list. Loc.R. 43.04 of the Court of Common Pleas of Franklin County provides as follows:

{¶ 66} "Any witnesses not disclosed in compliance with this rule may not be called to testify at trial, unless the Trial Judge orders otherwise for good cause and subject to such conditions as justice requires."

{¶ 67} Counsel argued that the prosecutor was not on the witness list. In response, plaintiffs' counsel noted that the city prosecutor who had served on defendant's criminal case was no longer with the office and that a different prosecutor was being called to testify. The court permitted the prosecutor to

testify provided that his testimony was confined to those things of which he had knowledge and that the testimony was permissible, as the court had previously determined that plaintiffs could establish the fact that criminal charges had been filed against defendant and that defendant had been placed on probation. Because the witness list did include the name of the prosecuting attorney who had actually prosecuted the criminal case against defendant, this court finds that there was no prejudice against defendant and that the trial court did not abuse its discretion by permitting his testimony, as it did not violate the nature of Loc.R. 43.04.

{¶ 68} Defendant also contends that Anita Bush, the supervisor of defendant's probation officer, should not have been permitted to testify. Again, because the trial judge indicated that plaintiffs would be permitted to establish the fact that criminal charges of stalking had been filed against defendant, the trial court did not abuse its discretion in permitting her to testify. Bush did nothing more than testify based upon the records that she had in her possession, which were kept in the ordinary course of business. The trial court did not abuse its discretion in permitting this evidence, and defendant's second and third assignments of error are not well taken and are overruled.

{¶ 69} In his fourth and fifth assignments of error, defendant argues that the trial court erred in permitting plaintiffs to present evidence of his actions prior to March 1999. Specifically, plaintiffs were permitted to read from and introduce into evidence 12 of the letters that defendant had sent to plaintiffs during the two-year period prior to the signing of the settlement agreement in March 1999. Plaintiffs testified that defendant had sent them over 100 letters during this time. There were two reasons why plaintiffs presented this testimony: (1) so that the jury could understand how the website postings made by defendant in January and February 2000 could have caused them serious emotional distress; and (2) so that the jury could see for itself defendant's writing style and determine whether defendant was responsible for more than the 26 website postings which defendant admitted that he had made. Defendant points to the fact that plaintiffs had released defendant from any claims which they had or may have against defendant arising out of any conduct of defendant prior to March 1999, the day of the agreement. Defendant contends that it was obvious that plaintiffs were attempting to be compensated for pre-March 1999 behavior and that it was an abuse of discretion for the trial court to permit this evidence.

{¶ 70} The trial court determined that the evidence was relevant and, as Evid.R. 401 provides, relevant evidence is admissible unless otherwise prohibited. Although defendant contends that his conduct prior to March 1999 is completely

irrelevant, the trial court disagreed, and this court finds that the trial court did not abuse its discretion.

{¶ 71} Viewing the website postings made by defendant in isolation, without considering defendant's prior conduct, these website postings would be described as opinionated, rude, too personal, and angry, and that they took on an increasingly aggressive and negative attitude. Without knowing that defendant had spent two years stalking and harassing plaintiffs, it would be impossible to understand why plaintiffs were asserting claims for emotional distress. However, when one realized that defendant had engaged in a pattern of conduct for two years harassing and stalking these women, sending them obscene, pornographic, violent letters, making numerous telephone calls to them, and showing up at their homes, then one could begin to see how any renewed conduct by defendant would cause plaintiffs emotional distress.

{¶ 72} The bottom line is that defendant's prior conduct was relevant to the presentation of plaintiffs' case and, even though the presentation of that evidence was prejudicial to defendant, its probative value was not substantially outweighed by unfair prejudice to defendant. As plaintiffs testified, prior to signing the agreement with defendant in March 1999, they were fearful, felt threatened, were terrified, took measures to ensure that they were never alone, left lights on, were always looking over their shoulders, had difficulty sleeping, sought counseling, and they were anxious all of the time. In March 1999, when they signed the settlement agreement with defendant, both plaintiffs testified that they believed the matter was over and done with and that defendant would never bother them again. Ten months later, defendant made postings on the website, which were seen by plaintiff Stockdale and which, as she testified, terrified her all over again. Both plaintiffs testified that, in January and February 2000, all the feelings that they had before the settlement agreement was signed came back to them. They testified further, however, that the feelings were actually worse because, in March 1999, plaintiffs actually had hope that the matter was settled. Now both plaintiffs realized that defendant did not know the limits of the law and that he was not able to control his obsessiveness with them. The trial court did not err and did not abuse its discretion in permitting plaintiffs to present these letters and to testify as to the contents of them, and defendant's fourth assignment of error is not well taken and is overruled.

{¶ 73} In his fifth assignment of error, defendant objects to the fact that plaintiffs were permitted to testify to and to admit into evidence copies of the website postings found at Cringe.com. Defendant argues that he admitted only to making 26 of the more than 80 postings to this website, those postings made under the name "Don Pijote." Over counsel's objections, plaintiffs were permitted to present copies of website postings made under other fictitious names,

which plaintiffs believed had actually been made by defendant. Plaintiffs testified that, in the two-year period that defendant had been harassing and stalking them, plaintiffs had become quite familiar with defendant's writing and speech styles. Both plaintiffs testified that, based upon the way defendant wrote and spoke, they believed that he had made more than the 26 website postings that he admitted to making. Furthermore, plaintiff Stockdale testified that, after she contacted defendant's probation officer regarding the website postings, all of the website postings under all of the fictitious names ceased.

{¶ 74} The trial court reviewed the matter and determined that it would permit plaintiffs to present a limited number of the website postings under names other than "Don Pijote" and that the jury could determine for itself whether defendant had made those postings.

{¶ 75} Again, this court finds that the evidence was relevant and that, although the evidence was prejudicial to defendant, its probative value outweighed the danger of unfair prejudice to defendant. Furthermore, defendant argues that postings made to a public website are directed to the public at large and they cannot constitute "contact" under the terms of the settlement agreement. Both the trial court and this court disagree. Defendant first gained access to plaintiffs through the Cringe.com website. Defendant knew that plaintiffs were musicians and that they were members of the local area bands. Furthermore, defendant specifically knew that plaintiff Stockdale visited the website. Defendant posted messages in a place where he knew, or had reason to know, that plaintiff Stockdale would see them. Defendant's actions constituted contact as described by the agreement. As such, defendant's fifth assignment of error is not well taken and is overruled.

{¶ 76} In his sixth and seventh assignments of error, defendant argues that the trial court erred by permitting plaintiffs to introduce into evidence the website postings made to Cringe.com. Defendant alleges that it was wrong to admit them when the full foundation for their relevancy was plaintiffs' testimony that they believed that defendant wrote the postings and that the trial court permitted improper opinion by lay witnesses that the message board postings under several different names were all actually made by defendant. For the reasons that follow, this court disagrees.

{¶ 77} Evid.R. 701 provides as follows:

{¶ 78} "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

{¶ 79} In *State v. McKee* (2001), 91 Ohio St.3d 292, 744 N.E.2d 737, the Ohio Supreme Court held as follows:

{¶ 80} "The experience and knowledge of a drug user lay witness can establish his or her competence to express an opinion on the identity of a controlled substance if a foundation for this testimony is first established."

{¶ 81} Courts in Ohio have allowed lay testimony as to other matters as well. In *Crane v. Lakewood Hosp.* (1995), 103 Ohio App.3d 129, 658 N.E.2d 1088, the Eighth District Court of Appeals described the types of cases in which lay witnesses can properly testify:

{¶ 82} "[I]t has long been recognized that a lay witness can testify to how fast a car was going, how big an article was, and similar observations based on common experience.

{¶ 83} " 'Where the testimony is based on recited personal observations, a non-expert can express opinions about another's insanity, *Weis v. Weis* (1947), 147 Ohio St. 416 [34 O.O. 350, 72 N.E.2d 245]; about another's physical condition, *Bronaugh v. Harding Hospital, Inc.* (1967), 12 Ohio App.2d 110 [41 O.O.2d 185, 231 N.E.2d 487]; about height, temperature, time, light, weight, dimension, distance, *State v. Auerbach* (1923), 108 Ohio St. 96, 98 [140 N.E. 507]; about another's emotional state, [*Baltimore & Ohio*] *Railroad Co. v. Schultz* [ (1885), 43 Ohio St. 270, 1 N.E. 324]; about the speed of a moving object, *State v. Auerbach, supra;* or about another's sobriety, *Railroad Co. v. Schultz, supra.*' *State v. Morris* (1982), 8 Ohio App.3d 12, 17, 8 OBR 13, 455 N.E.2d 1352."

{¶ 84} Defendant argues that an analysis of a person's writing style is too far removed from the common experience of the average person to permit a lay person to testify. The trial court disagreed and so does this court.

{¶ 85} Plaintiffs initially received over 100 letters from defendant. Plaintiff Stockdale spoke to defendant on the telephone numerous times. Both plaintiffs testified that defendant had a unique style of writing and speaking. They noted his Victorian choice of words and his tendency to hyphenate words that would otherwise not be hyphenated. Furthermore, they testified about the nature of his writing. Both plaintiffs testified that the tenor of defendant's letters often changed so that he would almost be friendly at some times and then be hostile and violent at other times. They testified that they believed that defendant was responsible for more than 80 website postings made to Cringe.com.

{¶ 86} This court finds that the requirements of Evid.R. 701 were met and that their opinions were rationally based on their perception and that their opinions were helpful to a clear understanding of their testimony and the determination of facts at issue. As such, defendant's sixth and seventh assignments of error are not well taken and are overruled.

{¶ 87} Defendant's eighth, ninth, and tenth assignments of error are interrelated and will be addressed together. Defendant argues that the trial court erred by instructing the jury that it could award damages for plaintiffs' emotional distress on their breach-of-contract claim. Defendant contends that, having granted defendant's request for directed verdict on plaintiffs' intentional-infliction-of-emotional-distress claim, the trial court had concluded that plaintiffs did not present evidence of severe or debilitating emotional distress and could not recover under their breach-of-contract claim cause of action. Defendant also argues that the trial court erred in instructing the jury that it could award damages for plaintiffs' emotional distress in the absence of expert testimony relating to their emotional distress. Defendant also argues that the trial court erred by instructing the jury that, as a matter of law, the settlement agreement was a contract that the parties understood the breach of which was likely to result in psychological damage. For the reasons that follow, this court disagrees.

{¶ 88} The purpose of the jury charge is "to state clearly and concisely the principles of law necessary to enable the jury to accomplish the purpose desired." *Cleveland Elec. Illum. Co. v. Astorhurst Land Co.* (1985), 18 Ohio St.3d 268, 272, 18 OBR 322, 480 N.E.2d 794. The jury charge must be considered as a whole and a reviewing court must determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. *Becker v. Lake Cty. Mem. Hosp. West* (1990), 53 Ohio St.3d 202, 208, 560 N.E.2d 165. The decision to include or exclude a particular instruction generally lies within the sound discretion of the trial court. *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 602, 640 N.E.2d 159.

{¶ 89} The trial court charged the jury as follows:

{¶ 90} "The Plaintiffs claim that the Defendant breached or broke the contract. A contract is breached when one party, without just cause, fails or refuses to perform his agreement even though the other party performed as they were required to under the agreement.

{¶ 91} "In general, words in a contract are given their plain and ordinary meaning according to our common usage in daily life.

{¶ 92} "If you find by the greater weight of the evidence that the contract existed between the Plaintiffs and Defendant, and that the Defendant broke it or breached it, then you must decide whether this caused Plaintiffs to suffer any damage and if so, in what amount. * * *

{¶ 93} "* * *

{¶ 94} "Now, generally, the term losses does not include mental suffering. We're talking about the contract. There is an exception to this rule where the mental suffering was caused by the intentional or reckless breach of the contract

to render services of such a character, or to perform or act in such a way that the Defendant had reason to know that the breach might cause psychological damage.

{¶ 95} "The general rule for measuring damages is that the party whose contract has been breached without their fault is entitled to fair and reasonable compensation for the loss.

{¶ 96} "Now, if you find that the Defendant breached or broke the contract you will decide what amount of money will fairly and reasonably compensate Plaintiffs for, either one of them individually, for their actual loss resulting from the breach of the contract.

{¶ 97} "Plaintiffs have the right to be placed in the position in which they would have been if the contract had been fully performed. You will decide by the greater weight of the evidence what losses Plaintiffs have suffered by the Defendant's violation of the terms of the contract and injuries to Plaintiffs.

{¶ 98} "Now, these losses or damages may include loss of earnings, the effect the Defendant's actions had on the mental or psyche well-being of Plaintiffs, and their ability or inability to maintain their former quality of life."

{¶ 99} The crux of defendant's argument is that, since the trial court granted a directed verdict in favor of defendant on plaintiffs' cause of action for the intentional infliction of emotional distress on the basis that plaintiffs did not present evidence that was sufficient to support a finding of serious emotional distress as it relates to that particular cause of action, the trial court essentially determined that plaintiffs had likewise failed to present sufficient evidence that they suffered "serious emotional disturbance" for purposes of maintaining their action for damages as a result of defendant's breach of contract. In essence, defendant argues that both causes of action, intentional infliction of emotional distress and the damages claim for serious emotional disturbance arising from a breach of contract, are identical in terms of the proof necessary to demonstrate the requisite injury. On the other hand, plaintiffs argue that the two causes of action are not identical and that the contract itself was one that it was understood by the parties that a breach would cause serious emotional disturbance to the aggrieved party or parties.

{¶ 100} In *Kishmarton v. William Bailey Constr., Inc.* (2001), 93 Ohio St.3d 226, 754 N.E.2d 785, the Ohio Supreme Court addressed the issue of whether emotional-distress damages could be recovered in a breach-of-contract action where there was no contemporaneous physical injury. In answering that question in the affirmative, the court adopted the Restatement of the Law 2d, Contracts (1981) 149, Section 353, Comment *a*, which permits recovery in breach-of-contract cases for emotional distress without bodily injury under certain circumstances. The Restatement and the comment thereto provide:

{¶ 101} "Loss Due to Emotional Disturbance

{¶ 102} "Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.

{¶ 103} "Comment:

{¶ 104} "*a. Emotional disturbance.* Damages for emotional disturbance are not ordinarily allowed. Even if they are foreseeable, they are often particularly difficult to establish and to measure. There are, however, two exceptional situations where such damages are recoverable. * * * In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result. Common examples are contracts of carriers and innkeepers with passengers and guests, contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death. Breach of such a contract is particularly likely to cause serious emotional disturbance. * * *"

{¶ 105} Pursuant to the Reinstatement, recovery for emotional disturbance may be permitted where the contract or the breach of the contract is of such a kind that serious emotional disturbance was a particularly likely result. Upon review of the settlement agreement in this particular case, the trial court found, and this court agrees, that the nature of the contract itself is such that it is apparent that the parties were aware that any breach of the contract would have likely resulted in serious emotional disturbance. This particular contract is intensely personal in nature. The reason for the contract was to prevent any further emotional harm from occurring to plaintiffs and to keep plaintiffs from embarrassing or otherwise humiliating defendant by discussing the nature of his conduct and the nature of the agreement with people who were not a party to the contract. At the time that the contract was entered into, it was already apparent that defendant had caused emotional harm to plaintiffs and, although, by way of signing the agreement, plaintiffs released defendant from any liability for the emotional harm that had already occurred to them, it was apparent that any further contact from defendant would be likely to cause additional emotional harm to these plaintiffs. Most contracts are not this personal in nature; however, this court finds that the nature of this particular contract is such that the parties were aware that any breach of the contract was likely to result in serious emotional disturbance to the parties. This is implied both in the nature of the contract as well as the nature of defendant's violation of the contract.

{¶ 106} Part of defendant's argument seems to be that he contends that this court previously said that the emotional distress necessary to maintain a cause of action for intentional infliction of emotional distress is the same as the cause of

action for emotional distress arising out of the breach-of-contract claim. See *Powell,* supra. However, defendant's characterization of this court's decision in *Powell* is mistaken. As stated previously, the *Powell* case involved the mishandling of plaintiffs' mother's body after the mother had died. The decedent's body had fallen when a tray in the morgue malfunctioned and the decedent's face was bruised and she sustained a laceration. In granting summary judgment in favor of the hospital, the trial court concluded that plaintiffs had not shown that their feelings rose to a level of a serious or debilitating injury to satisfy the requirement for the cause of action of intentional infliction of emotional distress. Upon reviewing the record, this court agreed and specifically noted that the alleged cause of plaintiffs' emotional distress was inexplicably related to the decedent's death and that, in that particular case, expert testimony was necessary to establish a substantial cause of the relationship between the postmortem injuries to the decedent's body, as distinguished from the actual death of decedent, and the serious emotional distress purportedly suffered by plaintiffs. Furthermore, this court noted that plaintiffs did not present lay witnesses to testify that the injuries to the decedent visibly upset plaintiffs and impacted their grieving process, and there was no testimony from witnesses claiming that plaintiffs showed marked emotional changes in their behavior.

{¶ 107} With regard to the breach-of-contract issue, the trial court found that there was no evidence that plaintiffs had paid consideration for any promise by the hospital to take care of the decedent and that the evidence showed that the hospital was performing its obligations to care for the decedent when the unfortunate accident occurred. Therefore, the trial court granted summary judgment to defendant on plaintiffs' breach-of-contract claim. On appeal, plaintiffs argued that a contract had been established with the hospital because the hospital had promised to look after and care for decedent until the funeral home arrived to pick up the corpse. This court noted that, other than an allegation that a representative from the hospital informed plaintiffs that arrangements would be made with the funeral home to pick up their deceased mother, plaintiffs' complaint for breach of contract did not set forth specific terms of an agreement and did not allege that the hospital had received viable consideration as part of the agreement. Furthermore, this court noted that, even if plaintiffs had presented sufficient evidence of a contract and the hospital's breach of that contract, plaintiffs could not sustain their breach-of-contract claim because, as noted, plaintiffs failed to establish that they suffered serious emotional distress as a result of the hospital's handling of the decedent's body.

{¶ 108} Defendant uses this portion of this court's decision in *Powell* as an absolute statement of law that plaintiffs must show exactly the same level of emotional harm to recover under theories of intentional infliction of emotional

distress and serious emotional disturbance as a result of a breach of the contract. The statements made by this court were dicta and did not stand for a pronouncement of the state of the law. Instead, turning back to the Restatement, and looking at the facts of this particular case, including the nature of the contract, this court finds that it was implied that a breach of this particular contract would result in serious emotional disturbance to the aggrieved party or parties. In the present case, this court finds that there was evidence that was sufficient, not only to send the issue to the jury but also to support the jury's verdict. Plaintiffs testified that they became very emotionally distraught when the website messages appeared, and that all of the fear and anxieties that they felt prior to the signing of the settlement agreement in March 1999 returned. As such, plaintiffs testified that they had difficulty sleeping, felt that they were under a great amount of stress, feared for their lives, felt intimidated and scared, were terrified, were concerned that defendant was out there watching them, remembered defendant's comment in a letter that he would never let this issue with them die, and felt as if defendant would never be able to control his obsessive behavior where they were concerned. Plaintiff Stockdale testified that she wanted to go back to counseling but that the counselor she had used previously was no longer available. Due to the complexities of life, plaintiff Stockdale did not attempt to begin a relationship with a new counselor.

{¶ 109} In part, defendant appears to be arguing that, since plaintiff Stockdale called defendant's probation officer within two months of his contacting them through the website postings, there is no way that plaintiffs could have suffered any serious emotional disturbance. This court disagrees. There was evidence that plaintiffs felt exactly the same way they felt before signing the settlement agreement of March 1999 but that, in some ways, their fears were worse now because, in 1999, they had hope that the matter would end. The fact that plaintiffs did not permit defendant's renewed contact with them to continue for an extended period of time so that they would have greater emotional harm is not, and should not be, a determining factor on this issue.

{¶ 110} Because serious emotional disturbance is implied by the very personal nature of this contract's specific terms, and because serious emotional disturbance is implied in the very nature of defendant's breach of this contract, and because plaintiffs did present evidence that their emotional harm as a result of defendant's renewed contact with them was the same as it had been in March 1999, this court finds that plaintiffs presented sufficient evidence to go to a jury and that the trial court correctly instructed the jury. Therefore, defendant's eighth, ninth, and tenth assignments of error are not well taken and are overruled.

{¶ 111} In his eleventh, twelfth, thirteenth, fourteenth, and fifteenth assignments of error, defendant challenges various other jury instructions given by the court. Specifically, the eleventh, fourteenth, and fifteenth assignments of error address the issue of punitive damages and cover issues such as whether punitive damages must be specifically pleaded or claimed in order to be awarded, whether R.C. 2307.60 precludes the recovery of punitive damages, and whether punitive damages could be recovered in a breach-of-contract case. In the twelfth assignment of error, defendant contends that the trial court erred in instructing the jury that defendant was required to take plaintiffs as he found them even though plaintiffs' alleged predisposition to emotional distress had been the subject of the prior settlement. In his thirteenth assignment of error, defendant contends that the court erred by instructing the jury that it could award plaintiffs damages for a common-law tort action of "stalking" even though plaintiffs did not plead such a tort in their complaint. For the reasons that follow, this court overrules these assignments of error.

{¶ 112} In his eleventh assignment of error, defendant argues that the trial court should not have instructed the jury regarding punitive damages because plaintiffs' complaint had not included a request for such damages. Without addressing whether plaintiffs were required to include such a request for such damages in their complaint, a review of plaintiffs' complaint indicates that plaintiffs did, in fact, seek an award for punitive damages. Paragraph 18 of plaintiffs' complaint provides as follows:

{¶ 113} "18. In committing the acts described in this complaint, defendant was guilty of oppression, fraud, and malice. As a result, plaintiff is entitled to an award of exemplary or punitive damages."

{¶ 114} Defendant cites *DeCastro v. Wellston City School Dist. Bd. of Edn.* (2002), 94 Ohio St.3d 197, 761 N.E.2d 612, for the proposition that punitive damages are not recoverable in an action for breach of contract absent extraordinary circumstances and then asserts that plaintiffs failed to plead or prove any extraordinary circumstances in this case. This court disagrees. Not only did plaintiffs' complaint include a request for punitive damages, but plaintiffs did plead and submit evidence of extraordinary circumstances. The actions of defendant prior to the signing of the settlement agreement in March 1999, and his subsequent actions in January and February 2000, were certainly extraordinary and well beyond the scope of what one would define as ordinary.

{¶ 115} Defendant also argues that the trial court erred by instructing the jury that it could award plaintiffs damages for a common-law tort action of "stalking" even though plaintiffs had failed to plead that tort in the complaint. This court disagrees.

{¶ 116} In Ohio, punitive damages are not recoverable for the breach of a contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable. See *DeCastro,* supra. However, plaintiffs are not required to plead the related but independent tort. In *Goldfarb v. The Robb Report, Inc.* (1995), 101 Ohio App.3d 134, 655 N.E.2d 211, this court stated, as follows:

{¶ 117} "Defendant is correct that as a general rule punitive damages are not recoverable in an action for breach of contract. *Digital & Analog Design Corp. v. N. Supply Co.* (1989), 44 Ohio St.3d 36, 45–46, 540 N.E.2d 1358. However, an exception exists where the breach of contract is accompanied by a connected, but independent tort involving fraud, malice or oppression. *Saberton v. Greenwald* (1946), 146 Ohio St. 414 [32 O.O. 454, 66 N.E.2d 224]; *Carrera v. Sandman* (1989), 65 Ohio App.3d 422, 426, 584 N.E.2d 753; *R & H Trucking Inc. v. Occidental Fire & Cas. Co.* (1981), 2 Ohio App.3d 269, 2 OBR 298, 441 N.E.2d 816; Annotation, Punitive Damages for Breach of Contract (1933), 84 A.L.R. 1345. While the cases do not specifically address the issue, they suggest that in such a case the independent tort need not be pleaded or the jury be instructed as to the tort. See *Garrett v. Am. Family Mut. Ins. Co.* (Mo.App.1974), 520 S.W.2d 102; *Arthur Young & Co. v. Kelly* (1993), 88 Ohio App.3d 343, 352, 623 N.E.2d 1303; *R & H Trucking,* supra; *Grybauskas v. Associated Estates Corp.* (1976), 51 Ohio App.2d 231, 236, 5 O.O.3d 363, 367 N.E.2d 881. However, in order for the issue of punitive damages to properly be submitted to the jury, the party seeking punitive damages must present not only evidence of a breach of contract, but also evidence of conduct constituting a connected, but independent tort, together with evidence of fraud, malice or oppression. See *Garrett; Arthur Young; R & H Trucking; Grybauskas,* supra. As a result, whether the trial court erred in instructing the jury on punitive damages in the present case turns on whether the record contains evidence that defendant (1) breached its contract with plaintiff; (2) committed a connected tort independently of the breach of contract; and, in so doing, (3) acted fraudulently, maliciously or oppressively toward plaintiff."

{¶ 118} In the present case, plaintiffs presented evidence that defendant breached the settlement agreement by posting messages on the website. Although defendant admitted only to making the posting under one name, the trial court permitted plaintiffs to submit evidence of other postings which they believed were attributable to defendant as well. Further, the record showed that all of the postings, under various fictitious names, stopped after plaintiffs contacted defendant's probation officer. Second, the trial court determined that defendant's conduct in breaching the contract also constituted the common-law tort of stalking. Third, evidence was presented and the jury could have found that defendant's action in contacting plaintiffs again, after the settlement agree-

ment was agreed to, constituted a malicious act demonstrating defendant's ill will and hatred towards plaintiffs.

{¶ 119} Furthermore, defendant also argues that punitive damages cannot be awarded based on "insult." With regard to punitive damages, the trial court instructed the jury as follows:

{¶ 120} "Now, if you find for the Plaintiffs and award damages, nominal or actual, you may also consider whether you will separately award punitive damages. If you do not find actual or nominal damages, you cannot consider punitive damages.

{¶ 121} "Punitive damages may be awarded against the Defendant as a punishment to discourage others from committing similar wrongful acts. You are not required to award punitive damages to the Plaintiffs or Plaintiff, and you may not do so unless you find by the greater weight of the evidence that the Defendant acted with intent to insult or with actual malice.

{¶ 122} "Insult means any act or remark that is consciously, deliberately or intentionally scornful or humiliating.

{¶ 123} "And malice is a state of mind characterized by hatred, ill will, or in a spirit of revenge.

{¶ 124} "Now, if you award punitive damages, the amount should be fair and reasonable under all of the facts and circumstances. It should not be excessive nor influenced by passion, sympathy, or prejudice."

{¶ 125} First, as stated previously, punitive damages may be awarded in an action for breach of contract if there are extraordinary circumstances. *DeCastro,* supra. The circumstances involved in the present case were extraordinary. Second, punitive damages may be awarded where the breach of contract is accompanied by a connected, but independent, tort involving malice. A review of the record demonstrates that plaintiffs submitted evidence of malice on the part of defendant. This is not a situation where the defendant's behavior could be characterized as causing simply humiliation or mere insult. See *Yeager,* supra. Viewing the jury instructions as a whole, this court finds that the inclusion of this instruction did not mislead this jury in a matter materially affecting defendant's substantial rights.

{¶ 126} Defendant also argues that R.C. 2307.60 specifically precludes an award of punitive damages in the present case. This court disagrees.

{¶ 127} R.C. 2307.60 provides:

{¶ 128} "Anyone injured in person * * * by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized

by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code. * * *"

{¶ 129} The plain language of R.C. 2307.60 makes it clear that punitive damages can be recovered if a person is injured by the criminal acts of another. However, the record of conviction, unless obtained by confession, is not to be used as evidence in the civil action. R.C. 2307.60 is merely a compilation of the common law in Ohio that a civil action is not merged in a criminal prosecution which arose from the same act or acts. Under the facts herein, R.C. 2307.60 neither precludes nor specifically authorizes an award of punitive damages.

{¶ 130} In the present case, the trial court concluded that there had been stalking. Menacing by stalking is a criminal offense. The trial court acknowledged that there were no jury instructions relating to stalking as a tort action; however, the trial court determined that, based upon the facts of the present case, there was an actionable cause of action based upon the stalking. Again, defendant continues to argue that his actions prior to the signing of the settlement agreement were and are completely irrelevant; however, the trial court disagreed. While plaintiffs were not entitled to recover for their emotional distress that occurred prior to the signing of the settlement agreement, nothing precluded them from maintaining an action against defendant when he resumed contact with them. Defendant continues to argue that the website posting did not actually constitute "contact" and, as such, there was no breach of contract; however, the facts of this particular case support the trial court's findings and instructions.

{¶ 131} Defendant also argues that the trial court erred in instructing the jury that defendant took plaintiffs where he found them. Defendant again argues that he is being punished for his actions that occurred prior the signing of the settlement agreement. Defendant's argument ignores the fact that he had every reason to know that these plaintiffs were particularly fragile emotionally and, as stated previously, any intentional contact with them would cause further emotional harm.

{¶ 132} The entire premise of defendant's argument hinges on his theory that plaintiffs' weakened condition resulted from defendant's conduct prior to the signing of the settlement agreement and that the settlement agreement precludes plaintiffs from recovering for any damages caused by defendant's conduct prior to the signing of that agreement. While defendant is correct that plaintiffs could not recover for damages caused by defendant's conduct prior to the signing of the settlement agreement, defendant is incorrect in arguing that the trial court erred in instructing the jury that defendant took plaintiffs where he found them.

Defendant's conduct, in breach of the contract, caused these plaintiffs, whom he had reason to know would be susceptible to further emotional distress if he contacted them, to suffer additional emotional distress. The settlement agreement is not a shield behind which defendant may hide and escape liability.

{¶ 133} For all of the foregoing reasons, defendant's eleventh, twelfth, thirteenth, fourteenth, and fifteenth assignments of error are overruled.

{¶ 134} In his sixteenth assignment of error, defendant argues that the trial court erred in denying his motion for a directed verdict as to plaintiff Spurgeon. The entire basis for defendant's argument is that he had no reason to know that plaintiff Spurgeon would access the website and defendant points to page 374 of the transcript where plaintiff Spurgeon testified that she had never had contact with defendant. For the reasons that follow, this court overrules defendant's sixteenth assignment of error.

{¶ 135} A motion for a directed verdict must be denied if there is substantial, competent evidence supporting the position of the parties opposing the motion so that reasonable minds might reach different conclusions based upon the evidence. *Apel v. Katz* (1998), 83 Ohio St.3d 11, 697 N.E.2d 600. This court finds that the record contained the requisite evidence to support the trial court's denial of the motion for a directed verdict as to plaintiff Spurgeon as well as the jury's verdict in her favor.

{¶ 136} In turning to page 374 of the transcript, plaintiff Spurgeon was being questioned concerning a letter defendant had sent her wherein he indicated that he had sent plaintiff Stockdale a letter that he asked plaintiff Stockdale to forward on to plaintiff Spurgeon. In that letter, defendant provided information to plaintiff Spurgeon as to what time of day she could best reach him by telephone. Plaintiff Spurgeon then testified that she did not have defendant's phone number and that she had never contacted defendant. The testimony at page 374 indicates only that plaintiff Spurgeon never had telephone contact with defendant and does not support defendant's argument that plaintiff Spurgeon testified that she never had any contact with defendant whatsoever. In fact, plaintiff Spurgeon specifically testified that she personally had seen the postings made by defendant and that those postings had a harmful, negative impact on her. Furthermore, the record indicates that it was through this website that defendant originally gained access to plaintiffs. Furthermore, he knew that plaintiffs were members of bands and that the various bands posted information on this website. Based upon the evidence, the trial court did not err in denying defendant's motion for a directed verdict as to plaintiff Spurgeon, and defendant's sixteenth assignment of error is overruled.

{¶ 137} In his seventeenth assignment of error, defendant argues that the trial court erred in awarding attorney fees to plaintiffs without conducting an evidentiary hearing as to the reasonableness and amount of such fees.

{¶ 138} On February 15, 2002, the trial court held a hearing on plaintiffs' motion for attorney fees to determine their reasonableness. The trial court accepted the testimony of plaintiffs' counsel and concluded that, as an attorney, she was an expert to testify on the reasonableness of her fees. Furthermore, counsel for defendant did not object to an hourly rate of $150. Counsel did object that plaintiffs' counsel did not present an itemized list detailing the amount of time that she spent working on plaintiff's case. Counsel for defendant was permitted, in essence, to testify herself. The trial court considered the testimony of the two attorneys and determined that plaintiffs' counsel was indeed asking for an excessive amount of attorney fees. As such, the trial court awarded what it determined to be a reasonable amount and awarded $35,000. Defendant has not shown that the trial court's award is excessive or that it constitutes an abuse of discretion. A trial court has broad discretion to determine the appropriate amount of an award of attorney fees and, absent an abuse of discretion, such an award should not be reversed. *Atwood Resources, Inc. v. Lehigh* (1994), 98 Ohio App.3d 293, 648 N.E.2d 548. Defendant has not shown an abuse of discretion here. Defendant's seventeenth assignment of error is overruled.

{¶ 139} Based on the foregoing, defendant's assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is hereby affirmed.

Judgment affirmed.

LAZARUS and BROWN, JJ., concur.